| t GREMILLION, Judge.
In this case, the defendant, Jawanza Banyard, appeals the trial court’s judgment in favor of the plaintiff, the State of Louisiana, finding that $8,000 U.S. Currency was properly seized by the State. For the following reasons, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
On November 6, 1999, Officer Arthur Lee Phillips, Sr., of the Jefferson Davis Parish Sheriffs Department, stopped the vehicle operated by Banyard for improper lane usage and, after a search, seized the $8,000 located in the center console.
On November 9, 1999, Banyard was served with a Notice of Pending Forfeiture which informed him that the State was initiating forfeiture proceedings against the money pursuant to La.R.S. 40:2601 et seq. On November 10, 1999, an Affidavit Supporting Warrant for Seizure of Property was filed into the record. On November 16, 1999, Banyard filed a Motion to Release Seized Property requesting a probable cause hearing. Following a hearing on December 14, 1999, the trial court detennined that such a hearing was unnecessary since an affidavit supporting the warrant for seizure established probable cause.
On February 18, 2000, Banyard filed a Motion to Release Funds pursuant to La. R.S. 40:2608(l)(a), urging that the State failed to timely initiate forfeiture proceedings. On that same day, the State filed a Petition for Forfeiture in Rem Action. On March 3, 2000, Banyard filed an Exception of Prescription urging that the State’s cause of action had prescribed. Following a March 28, 2000 hearing, the trial court rendered written reasons for judgment finding that Banyard failed to | ¿file a valid Motion to Release Seized Property under La.R.S. 40:2610 because of numerous form defects, thus, the ninety day delay period provided for in La.R.S. 40:2608(1) had not expired before the filing of the State’s petition.
On August 31, 2000, Banyard filed an answer. The judgment pertaining to the March 28, 2000 hearing was signed on September 19, 2000, and denied Banyard’s motion to release funds and exception of prescription. On September 20, 2000, the State filed an Application for Order of Forfeiture urging that more than thirty days had elapsed since service of the Notice of Pending Forfeiture and that it was entitled to a judgment of forfeiture against the property. On that same day, the State filed a Motion to Quash urging that, because the claim was not timely filed pursuant to La.R.S. 40:2610, the Interrogatories and Request for Production of Documents served upon it by Banyard on August 31, 2000, were pretermitted. A hearing was scheduled for October 24, 2000, a copy of which was not in the record.
Trial on the merits was held in July 2001, after which the trial court found that the money was forfeitable. Banyard timely appealed to this court.
Banyard assigns as error:
1. The trial court’s finding that there was sufficient reasonable suspicion for an investigatory stop.
2. The trial court’s finding that he had not filed a proper claim pursuant to La.R.S. 40:2610.
*637 3. The trial court’s finding that the currency was forfeitable pursuant to La.R.S. 40:2601 et seq.
REASONABLE SUSPICION
Banyard argues that he should not have been stopped because there was insufficient reasonable suspicion that a traffic violation occurred and because | ¡¡inconsistencies exist in Officer Phillips’ testimony. We disagree.
An individual cannot be stopped in his automobile by a police officer, without a warrant, unless the officer had a reasonable suspicion that the individual has committed, or is about to commit, a criminal offense, including the violation of a traffic regulation.
State v. Fisher, 94-603, p. 5 (La.App. 3 Cir. 11/2/94), 649 So.2d 604, 607, writ denied, 94-2930 (La.4/7/95), 652 So.2d 1344. The factual finding that Officer Phillips had reasonable suspicion to believe that Banyard was committing a traffic violation was a credibility determination within the trial court’s vast discretion. Id. Such a finding will not be disturbed on appeal absent a finding that the trial court clearly abused its discretion. Id.
Banyard was cited for improper lane use in violation of La.R.S. 32:79, which states in pertinent part:
Whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following rules, in addition to all others consistent herewith shall apply:
(1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.
In a supplemental investigative report dated November 6, 1999, Officer Phillips stated that he observed the vehicle driven by Banyard “cross the white line in the slower lane of traffic to the shoulder,” after which he had Banyard pull the vehicle over to the shoulder of the roadway. At trial, Officer Phillips stated that he observed Banyard commit improper lane use in that he “crossed the centerline.” On cross-examination, he agreed that he saw Banyard “cross the lane,” and that counsel correctly referred to the “center lane.” Officer Phillips testified that when Banyard improperly crossed the lane, he “straddled, not all the way. I mean, the left wheel | ¿crossed over I’d say maybe midway.”
Banyard argues that Officer Phillips originally claimed that he crossed over onto the shoulder, whereas at trial he claimed that he crossed over the center line, which is an inconsistency too large to ignore. We disagree. The trial court credited the testimony of Officer Phillips that Banyard had committed a traffic violation. We cannot say that his description of the offense as a crossing of the “center-line” rather than the “shoulder” is a fatal error. Officer Phillips conducted the stop in November 1999, and did not testify regarding the reason he stopped Banyard until July 2001. The trial court found Officer Phillips’ testimony credible, despite the discrepancy. Based on a review of his testimony and affidavits, we cannot say that the trial court committed manifest error in crediting Officer Phillips’ testimony that Banyard had committed the offense of improper lane usage in violation of La.R.S. 32:79. This assignment of error is without merit.
LA.R.S. 40:2610
Banyard next argues that the form defects cited by the trial court invalidating his claim under La.R.S. 40:2610 were without merit. We disagree.
La.R.S. 40:2610 states:
*638 A. Only an owner of or interest holder in property seized for forfeiture may file a claim, and shall do so in the manner provided in this Section. The claim shall be mailed to the seizing agency and to the district attorney by certified mail, return receipt requested, within thirty days after Notice of Pending Forfeiture. No extension of time for the filing of a claim shall be granted.
B. The claim shall be in affidavit form, signed by the claimant under oath, and sworn to by the affiant before one who has authority to administer the oath, under penalty of perjury or false swearing and shall set forth all of the following:
|B(1) The caption of the proceedings as set forth on the Notice of Pending Forfeiture or petition and the name of the claimant.
(2) The address where the claimant will accept mail.
(3) The nature and extent of the claimant’s interest in the property.
(4) The date, identity of the transfer- or, and the circumstances of the claimant’s acquisition of the interest in the property.
(5) The specific provision of this Chapter relied on in asserting that the property is not subject to forfeiture.
(6) All essential facts supporting each assertion.
(7) The specific relief sought.
The trial court, in its written reasons for judgment, found:
The first pleading filed on behalf [of] Mr. Banyard was a Motion to Release Seized Property dated November 15, 1999, and filed November 16, 1999. Although the motion purports to be in affidavit form, the second page of the motion which contains the purported signatures of the affiant, the witnesses, and the notary public, are not original signatures. La.R.S. 40:2610(B) specifically requires that the claim be “signed by the claimant under oath, and sworn to by the affiant before one who has authority to administer the oath.... ” Additionally, Louisiana Code of Civil Procedure Article 863 provides that every pleading of a party be signed by the attorney representing the party or, where required by law, by the party, with such signature constituting “a certification by him that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact; that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed by any improper purpose, such as to harass or to case unnecessary delay or needless increase in the cost of litigation.” Code of Civil Procedure Article 863(C), provides that “if a pleading is not signed, it shall be stricken unless promptly signed after the omission is called to the attention of the pleader.”
The only instance allowing the filing of a copy of a pleading is La.R.S. 13:850 which provides for the filing of pleadings in civil actions by facsimile transmission. However, the statute requires that within five | fi(5) days, exclusive of legal holidays, after the receipt of the facsimile transmission by the Clerk of Court that the party filing the facsimile transmission forward the original signed document to the Clerk. Under La.R.S. 13:85(C), if the party fails to comply with these requirements, the facsimile filing shall have no force or effect.
If the signature page of the Motion to Release Seized Property was submitted as a facsimile transmission, the record does not contain any evidence that Mr. Banyard has complied with subsection C *639 of La.R.S. 40:850 by providing an original signed document. The Motion to Release Seized Property as a facsimile transmission, therefore, is to have no force or effect.
Even if we consider that the Motion to Release Seized Property was not submitted as a facsimile transmission and the defective signature page was submitted inadvertently by counsel, the motion, as submitted, does not comply with the requirements of La.R.S. 40:2610(B), in that it is not signed by the claimant, nor are the signatures of the witnesses and notary original signatures, which calls into question the very form of the affidavit itself.
The Motion to Release Seized Property fails to comply with La.R.S. 40:2610(B) in other areas as well. Neither the motion, nor any other pleadings filed on behalf of Mr. Banyard, set forth “the nature and extent of the claimants’s interest in the property” as required under La.R.S. 40:2610(B)(3), or provide the “date, identity of the trans-feror, and the circumstances of the claimant’s acquisition of the interest in the property” as required under La.R.S. 40:2610(B)(4). Additionally, the motion and other pleading filed on behalf of Mr. Banyard do not contain any “essential facts supporting his assertion of ownership in the seized property” as required by La.R.S. 40:2610(B)(6).
Under these circumstances, the Court must conclude that the record does not contain a claim as required by La.R.S. 40:2610, and accordingly, the ninety (90) day delay period provided for in La.R.S. 40:2608(l)(a) had not expired before the filing of the State’s Petition for Forfeiture in Rem Action.
We have reviewed the motion filed by Banyard and agree with the trial court’s findings, adopting them as our own. Banyard now argues, as set forth in his Motion to Release Seized Property, that, pursuant to the Fifth Amendment of the United States Constitution and Article 1, Section 16 of the Louisiana Constitution, |7he did not have to provide the information required in La.R.S. 40:2610(B)(3), (4), and (6) because such information could have led to self-incrimination. This argument has no merit. While it is true that the answers to such questions could be self-incriminating or lead to prosecution for perjury or false-swearing, the statute does not violate any constitutional guarantees. If one does not wish to incriminate himself or subject himself to prosecution for perjury or false swearing, he simply does not file a claim under La.R.S. 40:2610, as the filing of such a claim is not required. However, if a claim is filed under the statute, it must conform to the statute’s requirements. Moreover, even if Banyard could invoke a Fifth Amendment privilege, the form would be defective for the other reasons mentioned. Accordingly, Ban-yard’s Motion to Release Seized Property is defective in form and his claim was properly invalidated.
FORFEITURE
Banyard argues that the trial court erred in concluding that the currency was forfeitable pursuant to La.R.S. 40:2601 et seq. We disagree. La.R.S. 40:2612(G) sets forth the applicable burden of proof in a forfeiture action as follows:
In a forfeiture case wherein no claim is timely filed pursuant to the provision of this Chapter, the burden of proof to forfeit shall be probable cause. In a forfeiture case, wherein a claim is timely filed pursuant to the provisions of this Chapter, the burden of proof required to forfeit the defendant’s property shall be a preponderance of the evidence.
*640 Because Banyard failed to file a proper claim, the State bore the burden of proving that it had probable cause to believe that the money was subject to forfeiture. In State v. Seventy-Seven Thousand Fourteen & No/100 Dollars, 607 So.2d 576, 582 (La.App. 3 Cir.1992), writ denied, 612 So.2d 61 (La.1993) (citations | ¡¡omitted), we addressed the meaning of probable cause and its relation to the seizure of money in a civil forfeiture ease, adopting federal standards:
The government bears the initial burden of proving probable cause to connect the currency to some form of criminal wrongdoing. However, it is not necessary that the government trace the currency to a particular drug transaction. As noted in One 1987 Mercedes 560 SEL:
Probable cause is a “reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion.” ... It may be established by demonstrating “by some credible evidence, the probability that the money was in fact drug related.... Probable cause can be established by circumstantial or hearsay evidence.” .... (citations omitted) U.S. v. One 1987 Mercedes 560 SEL, 919 F.2d at 331(citations omitted).
When judging the evidence, the federal courts look at the “totality of the circumstances” or “aggregate of facts.” In One 1987 Mercedes 560 SEL, the federal Fifth Circuit noted:
This evidence goes beyond a mere suspicion. When evaluating whether a forfeiture is proper under a statute, the evidence “must be judged not with clinical detachment but with a common sense view to the realities of life.”
[[Image here]]
The Ninth Circuit noted in U.S. v. Padilla[888 F.2d 642 (9th Cir.1989)], supra:
This circuit applies an “aggregate of facts” test to find probable cause for forfeiture.... Probable cause cannot be shown unless the aggregate of facts gives rise to more than mere suspicion that the property was exchanged for or intended to be exchanged for drugs; the presence or absence of any single fact is not dis-positive.
We reviewed the trial court’s finding using the manifest error standard, and we agree that the State met its burden of proving that the forfeited money and Ban-yard were connected to the drug trade. La.R.S. 40:2604(2) permits the forfeiture of property that is:
|fl(a) Furnished or intended to be furnished by any person in exchange for a controlled substance in violation of R.S. 40:961 et seq.
The trial court gave extensive reasons for concluding that the money was forfeitable, relying on the evidence presented at trial, including the testimony of Officer Phillips and Banyard.
In his testimony, Officer Phillips stated that, upon pulling Banyard over to the shoulder of the road, he inquired as to where he was headed. Officer Phillips testified that Banyard informed him that he was going to Houston, Texas, to attend a football game in which Mississippi State was playing. However, Officer Phillips stated that Banyard could not identify the other team scheduled to play. He said that he was suspicious of Banyard because he was traveling to a known drug source city, could not identify the other football team, and was in a vehicle that was rented by his aunt. Officer Phillips stated that he asked Banyard if he had ever been arrested before and was told that he had been arrested for disorderly conduct, but nothing else. Officer Phillips stated that he returned to his unit, ran a criminal history, *641 and was advised by dispatch that Banyard had been arrested for two counts of possession of cocaine. Officer Phillips further testified that Banyard would not make eye contact when responding to his questions and that he felt he was trying to cover up something.
Officer Phillips stated that he next asked Banyard if he could search the car to which he initially responded “yes,” but later refused. He testified that he decided to use his K-9, Angel, to search the car and that she alerted on the passenger side door and the trunk area of the vehicle. Officer Phillips then advised Banyard that he would be searching the vehicle. He discovered two bundles of currency in the |incenter console and asked Banyard if they were his and how much money they contained. Officer Phillips stated that Banyard first claimed it was $3,000 and later claimed it was $4,000; however, a later count revealed that it totaled $8,000. He further testified that the money smelled of marijuana. He also said that $705 was retrieved from Banyard’s person and that he was allowed to keep that amount.
Banyard testified that he was traveling through Jefferson Davis Parish in a rental vehicle on the date in question, and that his aunt rented the car for him because he was not old enough at the time. He stated that he informed Officer Phillips that he was attending a football game between Texas Southern and Jackson State in Houston. He said that he told Officer Phillips that he did not have anything illegal in the car and that he could search the rental vehicle and use his narcotics dog. He stated that, after Officer Phillips found the money and inquired as to the amount, he initially told him varying amounts because he was nervous. Banyard testified that he received the money from work; however, his counsel subsequently invoked his Fifth Amendment right not to incriminate himself. Counsel further invoked the right pertaining to all questions inquiring if the money was related to drug activity. Banyard admitted to being arrested in January 1995, for possession of cocaine with intent to distribute; being charged with possession of illegal narcotics in March 1995; arrested in October 1998, for possession of cocaine with intent to distribute; and, being convicted of possession of cocaine with intent to distribute in April 2000, for which he received five years probation. Banyard further admitted that a search of his home following the most recent arrest produced two weapons, a safe containing crack cocaine, and $6,060. He also admitted being actively involved in the distribution of I-,,cocaine in the Jackson, Mississippi area, but denied that in this particular case he was en route to purchase cocaine to bring back to distribute in the Jackson area. He testified that, at the time of the seizure, he was employed full-time as a shipping clerk at Blackwell Chevrolet and that he resided with his aunt. He stated that his other aunt also resided in the same residence and that she had a drug problem and had stolen money from him in the past. Thus, he claimed that he took the money he had saved up from his job with him in order to prevent his aunt from stealing it. When asked by his own counsel if the money was to be used to purchase drags or was in anyway related to drag activity, he responded, “No.”
The trial court noted the following factors as persuasive that probable cause existed to forfeit the money: Banyard was in a rental vehicle that he was not authorized to drive nor take out of the state of Mississippi; he was headed to a source city and provided inconsistent reasons for traveling there; he admitted to being arrested only for disorderly conduct; his arrest in 1998 and conviction in April 2001, of possession *642 of cocaine with intent to distribute; providing Officer Phillips with differing amounts when questioned as to how much money he had; and, lack of any evidence such as tax returns or W2 forms to show that Banyard was employed during that period of time. The trial court further found Officer Phillips’ testimony was accurate and credible and that Banyard failed to produce any evidence to support his testimony. The trial court concluded that Banyard was traveling to Houston for the purpose of purchasing illegal drugs and that the State had proven its case, not only by probable cause, but by a “clear preponderance of the evidence.”
|1?While we cannot say that the State has proven the case by a clear preponderance of the evidence, we do not find, after reviewing the evidence, that the trial court was manifestly erroneous in finding that it met its burden of proving that probable cause existed to subject the money to forfeiture. Consideration of all the credible evidence leads to a reasonable belief that the money was connected to illegal drug activity. Banyard argues that the trial court erred in failing to connect the money to a particular drug transaction. However, we have specifically held that connection to a particular drug transaction is not necessary. See State v. Seventy-Seven Thousand Fourteen & No/100 Dollars, 607 So.2d 576. The totality of the evidence presented was sufficient to connect the seized money to illegal drug activity. We find that the State carried its burden of proving probable cause to connect the currency to criminal wrongdoing. Moreover, the trial court is in the best position to assess the credibility of the witnesses, and we will not disturb its finding if reasonable minds could have reached the same conclusion. Therefore, this assignment of error is without merit.
CONCLUSION
The judgment in favor of the plaintiff-appellee, the State of Louisiana,, is affirmed. All costs of this appeal are assessed against the defendant-appellant, Ja-wanza Banyard.
AFFIRMED.