# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-357

STATE OF LOUISIANA

VERSUS

$3,356,183.00 U.S. CURRENCY (APPROXIMATELY) ( IN POSSESSION OF DEAN BODENDIECK)

**********

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. C-732-03
HONORABLE WENDELL R. MILLER, DISTRICT JUDGE

**********

## JOHN B. SCOFIELD
## JUDGE

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, John B. Scofield, John D. Saunders and Billie C.Woodard, Judges.

REVERSED AND REMANDED.

Amy, J., dissents and assigns written reasons.
Saunders, J dissents.

**Charles Long Bull, Jr.**
**P. O. Box 400**
**Welsh, LA 70591**
**Counsel for Defendant-Appellant**
    **Dean Bodendieck**

**Norman Silverman**
**801 Congress, Suite 200**
**Houston, TX 77002**
**Counsel for Defendant-Appellant**
    **Dean Bodendieck**

**W. Troy McKinney**
**440 Louisiana, Suite 2110**
**Houston, TX 77002**
**Counsel for Defendant-Appellant**
    **Dean Bodendieck**

**Bennett R. LaPoint**
**P. O. Box 1388**
**Jennings, LA 70546**
**Counsel for Plaintiff-Appellee**
      **State of Louisiana**

SCOFIELD, Judge[*]

Dean Bodendieck appeals the trial court's order striking his claim to $3,356,183.00 seized by the State of Louisiana during a commercial vehicle inspection.

## FACTS

On October 8, 2003, Dean Bodendieck was driving west on I-10 in Jefferson Davis Parish in a Dodge pickup truck towing a gooseneck trailer. State Trooper Ivey Woods, a certified motor carrier safety officer, stopped the vehicle in the belief that it was an unmarked commercial vehicle attempting to bypass the commercial vehicle inspection process. Officer Woods testified that he discovered $3,356,183.00 in currency in the trailer. It was Woods' testimony that he stopped the truck for inspection pursuant to the Federal Motor Carrier Safety Act[1] because he suspected, due to the size and type of trailer, that the truck was being used for commercial transport. Officer Woods testified that the vehicle registration showed it to be a private carrier vehicle registered to Bodendieck. When asked about his cargo, Bodendieck told Woods he was hauling property belonging to his mother, which had previously been stored in Atlanta, Georgia. When asked to open the trailer, Bodendieck obeyed. Finding a locked compartment behind the goods in the trailer, Woods asked Bodendieck to let him take a look and Bodendieck unlocked the compartment. Inside were suitcases, which, according to Woods, Bodendieck stated were bags belonging to his mother and which he had removed from storage. Upon being asked by Woods to open a bag, Bodendieck pulled out and opened the smallest

---

[*] Honorable John B. Scofield participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

[1] 49 U.S.C.A. § 31101, et. seq.

which revealed a large amount of currency wrapped in plastic bags. At that point, Woods placed Bodendieck under arrest, handcuffed him, and called for backup. Woods found money in seven out of nine bags. Woods testified that he placed Bodendieck under arrest because he deemed it illegal to carry that much cash. The truck, trailer and the currency were seized.

Once in custody, Bodendieck was interviewed by State Trooper Brett Travis. At the hearing, Officer Travis testified that he read Bodendieck his Miranda rights and had him sign a rights form which was introduced into evidence. Bodendieck was charged with illegal use of currency, a violation of La.R.S. 40:1049. Officer Travis testified that Bodendieck waived his rights and agreed to answer questions. Bodendieck's limited testimony[2] confirmed that he was not threatened by the investigating officers. Bodendieck signed a Disclaimer of Currency or Property form, which identifies the currency as "Approximately $3,500,000.00 to be counted by Bank Standards" and states:

> I hereby state that I am not the owner of this currency or property. I have no interest in it and have no claim for its return to me.
>
> . . . .
>
> I have been advised and understand that by signing this disclaimer of ownership, I am waiving any right to notice of seizure or intention to seek forfeiture of this currency or property.

The form further indicates that the owner of the currency was an individual known only as "Loco" whose address is unknown. Officer Travis indicated that Bodendieck had admitted to him that the money was related to illegal narcotics activity and that he was paid for transporting drug related currency.

---

[2] At the trial court hearing, Bodendieck asserted his rights under the Fifth Amendment and refused to answer all but a very few of the questions asked him.

2

TRIAL COURT PROCEEDINGS

This case comes on appeal in an unusual procedural posture. Since the procedural aspects of the case will be the crux of our decision, they need to be examined in more detail than ordinary. The "hearing" or "trial" of this matter occurred on December 16, 2003. We shall refer to this session of court as a hearing.

The following is a chronology of the documents and pleadings submitted prior to the hearing on December 16, 2003:

- On October 10, 2003, the State filed an Affidavit Supporting Warrant for Seizure of Property pertaining to the currency seized in this case. A Warrant to Seize Property, signed by the district judge, was issued on that date. At the same time, a Notice of Pending Forfeiture appeared in the Jennings Daily News. There is no indication that any of these documents was served on Bodendieck.

- On November 2, 2003, Bodendieck executed a Claim/Affidavit asserting "an ownership and/or possessory interest in the seized currency" and sent it to the Sheriff and the District Attorney for Jefferson Davis Parish. The Claim/Affidavit was not, at that time, filed in the court record.

- On November 12, 2003, the State filed a Motion to Strike Claim, attaching thereto Bodendieck's Claim/Affidavit. The State moved to strike the Claim/Affidavit on the grounds that it did not affirmatively assert an ownership interest in the property; that a possessory interest would not be sufficient to confer standing to claim the property; that the claim was not in compliance with the statutory requirements of La. R.S.

3

40:2610(B)(3) & (4)[3] in that it failed to state the nature and extent of Bodendieck's interest in the money, and the date, the identity of the transferor and the circumstances of Bodendieck's acquisition; and that Bodendieck had admitted that the currency was the property of one named "Loco." Also, on November 12, 2003, the trial court signed an order setting the State's Motion to Strike for hearing on November 26, 2003. Notice of that motion to Strike and the order setting the hearing was sent to Bodendieck and his attorney, Norman Silverman.

• On November 24, 2003, Silverman, a Texas attorney, filed a motion to enroll as counsel under La.R.S. 37:214, which allows for visiting attorneys to be enrolled as counsel in the courts of this state in associated with a member of the Louisiana Bar Association.

• On November 25, 2003, Bodendieck, filed Claimant's Motion to Strike Hearing on Motion to Strike Claim and for Continuance. The trial court granted the continuance and reset the hearing on the State's Motion to Strike to be heard on December 16, 2003.

On December 16, 2003, prior to the hearing, the following pleadings were filed:

_____

[3] La. R.S. 40:2610(B) states, in pertinent part, that:

(B)The claim shall be in affidavit form, signed by the claimant under oath, and sworn to by the affiant before one who has authority to administer the oath, under penalty of perjury or false swearing and shall set forth all of the following:
. . . .
(3) The nature and extent of the claimant's interest in the property.

(4) The date, identity of the transferor, and the circumstances of the claimant's acquisition of the interest in the property.

4

- Bodendieck filed a response to the State's motion to strike his Claim/Affidavit in which he asserts that his claim was not a pleading and could not, therefore, be the subject of a motion to strike pursuant to La.Code Civ.P. art 964

- Bodendieck also filed a motion to suppress "any and all evidence seized in relation to Defendant's arrest," alleging that the trooper who stopped him had neither reasonable suspicion nor probable cause to detain or arrest him, and that the scope of the detention exceeded the justification therefor. As a result, he also pled that all the fruits of that detention and arrest should be suppressed as having been obtained in violation of the Louisiana and U.S. constitutions. He further asserted that all the statements he made should be suppressed as they were the product of his illegal detention and arrest.

- Also on the date of the hearing, the State filed a Petition for Order of Forfeiture. Attached to the petition was proof of publication of the notice of pending forfeiture, an initial complaint/offense report, a police report, an arrest report, a K-9 search report, a statement of rights signed by Bodendieck and Officer Travis, a State Police motor carrier safety form, Bodendieck's vehicle registration, a disclaimer of currency or property form signed by Bodendieck and signed by two state troopers, and a report of an ion scan of the currency.

At the hearing on December 16, 2003, the trial court heard Bodendieck's arguments challenging the State's use of a motion to strike his Claim/Affidavit, Bodendieck arguing that the Claim/Affidavit was not a pleading under La.Code Civ.

5

964. During the hearing, the court first heard evidence on the motion to strike Bodendieck's claim. The State elicited testimony from Bodendieck and State Trooper Brett Travis. Counsel for Bodendieck called as witnesses Trooper Ivey Woods and Mr. Wallace Simien, Jr. of the Jefferson Davis Parish Sheriff's Department.

After hearing the evidence on the motion to strike, the trial court ordered Bodendieck's Claim/Affidavit to be stricken and ruled that Bodendieck had not carried his burden of showing he had standing to pursue the claim. The court then heard the State's evidence on the petition for forfeiture and rendered a judgment of forfeiture.

DISCUSSION

After the actual physical seizure of the money on October 8, 2003, the first item filed by the State in these proceedings was an Affidavit Supporting Warrant for Seizure of Property (Seizure Affidavit) which was filed on October 10, 2003. There is no indication in the record that the Seizure Affidavit was served upon Bodendieck. Also on October 10, 2003, the State caused to be published in the Jennings Daily News, a Notice of Pending Forfeiture. On November 2, 2003, Bodendieck laid claim to the money in a Claim/Affidavit purportedly prepared in compliance with La.R.S. 40:2610. The Claim/Affidavit was sent to the Sheriff and the District Attorney as required by the statute. There is no requirement in the statute that the Claim/Affidavit be filed in a court proceeding.

On November 12, 2003, the State filed in these proceedings a Motion to Strike which was aimed at Bodendieck's Claim/Affidavit. This motion was served on Bodendieck and his Texas attorney, Mr. Silverman. A copy of Bodendieck's

6

Claim/Affidavit was attached to the State's motion and thereby became a part of this record. It was also the first pleading by the State which was served on Bodendieck

Although the State does not expressly classify this case as an in rem proceeding, the fact that the suit was filed against "$3,356,183.00 U.S. Currency," rather than against Bodendieck himself, leads us to conclude that the State intended this to be an in rem action pursuant to La.R.S. 40:2612. This statute permits the State to initiate an in rem action "pursuant to Notice of Forfeiture or verified petition for forfeiture." La.R.S. 40: 2612(A). The statute also provides in La.R.S. 40: 2612(C) that the service of the "petition" shall be effected in accordance with La.R.S. 40:2608[4].

While the State's Motion to Strike was properly served on Bodendieck and his attorney, a motion to strike cannot be considered a petition for forfeiture as

---

[4] La.R.S. 40:2608(3) & (4) provide that:

.

(3) Whenever Notice of Pending Forfeiture or service of an in rem petition is required under the provisions of this Chapter, notice or service shall be given in accordance with one of the following:

(a) If the owner's or interest holder's name and current address are known, by either personal service or by mailing a copy of the notice by certified mail to that address.

(b) If the owner's or interest holder's name and address are required by law to be recorded with the parish clerk of court, the motor vehicle division of the Department of Public Safety and Corrections, or another state or federal agency to perfect an interest in the property, and the owner's or interest holder's current address is not known, by mailing a copy of the notice by certified mail, return receipt requested, to any address of record with any of the described agencies.

(c) If the owner's or interest holder's address is not known and is not on record as provided in Subparagraph (b) of this Paragraph, or the owner or interest holder's interest is not known by publication in one issue of the official journal in the parish in which the seizure occurs.

(4) Notice is effective upon personal service, publication, or the mailing of a written notice, whichever is earlier, and shall include a description of the property, the date and place of seizure, the conduct giving rise to forfeiture or the violation of law alleged, and a summary of procedures and procedural rights applicable to the forfeiture action.

7

contemplated by the statute. The act permits the claimant to have 15 days to file an answer to the State's petition (La.R.S. 40: 2612(E)) and further permits the parties to engage in pre-trial discovery (La.R.S. 40: 2612(F)). The motion to strike is not the proper procedural vehicle to be used to challenge a party's cause of action, right of action or other substantive rights. It is not the proper method to procure a dismissal of a cause of action. *Hazelwood Farm, Inc. v. Liberty Oil and Gas Corp.*, 01-0345 (La.App. 3 Cir. 6/20/01), 790 So.2d 93, *appeal after remand,* 02-266 (La.App. 3 Cir. 4/2/03), 844 So.2d 380, writ denied, 03-1624, 03-1585 (La. 10/31/03)

Moreover, in this case the motion to strike was directed at Bodendieck's Claim/Affidavit which is not a pleading, and at the time of the filing of the motion, had not been filed in the record of this case. La.Code Civ.P. art. 964 clearly provides that a motion to strike can only be used to challenge portions of a "pleading."

In this case, the State's motion to strike was filed on November 12, 2003, and the motion was summarily set for hearing on November 26, 2003, this hearing date later having been continued to December 16, 2003. Although in rem proceedings conducted in accordance with La.R.S. 40:2612 are somewhat summary in nature[5], the proceedings are to be initiated by a petition of forfeiture. Service of the petition is to be effected upon the claimant, the claimant is to be allowed 15 days within which to answer, and the claimant--as well as the State--has the right to conduct discovery before the hearing.

It is telling that on the day of the hearing, December 16, 2003, the State did file a Petition of Forfeiture. Bodendieck was not allowed the 15 day delay within which to file an answer to this petition nor was he given the opportunity to conduct

_____

[5] La.R.S. 40:2612(G) provides that "the hearing on the claim shall be held within sixty days after service of the petition unless continued for good cause."

8

discovery. Instead, the forfeiture hearing was held on the very day the Petition for Forfeiture was filed. Because the trial court had earlier that day granted the State's motion to strike and had thus stricken Bodendieck's claim to the money, Bodendieck was not permitted to participate in the forfeiture proceedings.

It is to be noted that Bodendieck's constitutional challenges to his arrest and detainment, and his challenges to the alleged tainted evidence obtained by the State as a result thereof, were never addressed by the trial court.

Granted, there is nothing in the record as it stands now supporting Bodendieck's claim to the money other than its having been in the trailer he was pulling when he was detained. Moreover, the present record contains abundant evidence that Bodendieck has no claimable interest in the money and even if such interest ever existed, he had waived or forfeited it. Nevertheless, this does not, *ipso facto,* deprive Bodendieck of the procedural avenues afforded him by law. Conceivably, the evidence might have been different if the proper procedure had been followed.

Accordingly, we reverse the decision of the trial court and remand this case to the trial court so that the forfeiture proceedings might be conducted in accordance with law.

REVERSED AND REMANDED.

9

NUMBER 04-357

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

STATE OF LOUISIANA

VERSUS

$3,356,183,00 U.S. CURRENCY

AMY, J., dissenting.

I respectfully dissent from the majority opinion. My review of this matter indicates that at the hearing held on the motion to strike, the trial court afforded Mr. Bodendieck an opportunity to establish and, therefore, protect any ownership interest. At the hearing, Mr. Bodendieck was given the opportunity to call witnesses in support of his position and the ability to testify on his own behalf. The trial court considered the evidence presented and ultimately found in favor of the State, given Mr. Bodendieck's assertion of his Fifth Amendment privilege and the testimony of the investigating State Troopers. As I conclude that Mr. Bodendieck was provided with an adequate opportunity to be heard, I find an affirmation of the trial court's ruling appropriate.