# IN THE COURT OF APPEALS OF IOWA

No. 16-0440
Filed October 11, 2017

**IN THE MATTER OF PROPERTY SEIZED FROM JEAN CARLOS HERRERA and FERNANDO RODRIGUEZ,**

**JEAN CARLOS HERRERA and**
**FERNANDO RODRIGUEZ,**
        Claimants-Appellants.

_____

        Appeal from the Iowa District Court for Pottawattamie County, Gregory W. Steensland, Judge.

        Consolidated appeal from asset forfeiture proceeding filed pursuant to Iowa Code chapter 809A (2015).  **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

        Dean Stowers of Stowers & Sarcone PLC, West Des Moines, for appellants.

        Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant Attorney General, for appellee State.

        Heard by Vogel, P.J., and Doyle and McDonald, JJ.

**MCDONALD, Judge.**

In this consolidated appeal, Jean Carlos Herrera and Fernando Rodriguez each appeal from separate orders issued in the same civil asset forfeiture proceeding initiated pursuant to Iowa Code chapter 809A (2015). Herrera appeals from an order forfeiting certain property to the State of Iowa. The property was forfeited on the ground Herrera failed to file a proper answer in response to the State's petition. In his appeal, Herrera contends he should be excused from compliance with the statutory pleading requirements because compliance would violate his right to be free from unreasonable search and seizure and his right against self-incrimination. Rodriguez was successful in obtaining the return of certain property, but he appeals from an order denying his request for statutory attorney fees. In his appeal, Rodriguez contends he was the prevailing party and thus entitled to statutory attorney fees.

I.

This case arises out of an Interstate traffic stop and roadside detention. The particular facts and circumstances surrounding the traffic stop and detention are largely immaterial to the resolution of the claims on appeal. In short, in September 2015, an Iowa Department of Transportation (IDOT) officer initiated a traffic stop of a Ford Expedition being driven by Herrera. The ground for the traffic stop was Herrera was exceeding the speed limit. Over the course of a forty-minute detention, the officer claimed to have developed reasonable suspicion Herrera and his passenger were engaged in drug trafficking. Herrera denied consent to search the vehicle, but the officer persisted. Without Herrera's consent, the officer used a canine unit to investigate further. The canine unit

alerted to the Expedition. After additional officers arrived at the scene, the officers searched the vehicle. The officers found the following: an ice cream maker, which had been gutted; a cordless drill and battery, which could be used to open the ice cream maker; a "boost phone," which is commonly used in drug trafficking; marijuana paraphernalia and a trace of marijuana inside a Pelican case; a rivet gun and rivets; a cellophane dispenser; a vacuum pump; $2600 in cash in the center console of the vehicle; and $887 in cash in the passenger's pocket. The officers also found a false compartment under the vehicle, but the false compartment was empty. The officers returned the cash to Herrera and the passenger but seized the other items, including the vehicle. The officers allowed the men to call for a taxi and leave the scene. The vehicle was towed to the IDOT maintenance garage. The vehicle was searched again at the garage, but the officers did not find anything else.

Rodriguez became involved in this case after the officers seized the Expedition. Rodriguez is the registered owner of the vehicle, and he obtained counsel to reclaim the vehicle. The officer initiating the traffic stop learned Rodriguez was interested in reclaiming the vehicle. Rodriguez's efforts to reclaim the vehicle caused the officer to become suspicious; in the officer's view, the market value of the old vehicle did not justify any effort to recover the vehicle. The officer emailed the assistant county attorney responsible for Rodriguez's claim, and the assistant county attorney informed the officer Rodriguez would be able to recover attorney fees if he prevailed on his claim. This undoubtedly should have lessened any suspicion. Nonetheless, the officer obtained a search warrant for the vehicle. The application for the warrant relied on the officer's

suspicion generated by the mere fact Rodriguez sought the return of his vehicle, but the application failed to mention Rodriguez would be entitled to fees if he prevailed on his claim. When the officers executed the search warrant, they found a secret compartment underneath the center console containing $44,900 in cash.

In October of 2015, the State filed an in rem forfeiture complaint, seeking forfeiture of the items seized during the traffic stop and during the subsequent search pursuant to the warrant. Herrera and Rodriguez filed a joint answer. Their answer contained the following statements:

> 1. I, Fernando Rodriguez, am the owner of the 1999 Ford Expedition identified in the complaint as being subject to forfeiture and an interest holder in the property seized therefrom, including the U.S. Currency in the vehicle.
> 2. I, Jean Carlos Herrera, was in lawful possession of the 1999 Ford Expedition, soft serve ice cream machine, pelican case, cordless drill and battery, vacuum pump and U.S. Currency identified in the complaint as being subject to forfeiture and have a legal ownership and possessory interest in those items.
> 3. We would ask that all mail in this matter be sent to our attorney . . . .
> 4. With this answer we are also filing a motion asserting that the vehicle stop, the subsequent detention and seizure, and the search of that vehicle, violated the prohibition against unreasonable searches and seizures found in the Fourth Amendment to the United States Constitution and the corresponding provision of the Iowa Constitution.
> 5. The exclusionary rule under the Fourth Amendment and Iowa Constitution applies in forfeiture proceedings. *See In re Flowers*, 474 N.W.2d 546, 548 (Iowa 1991).
> 6. By virtue of the application of the exclusionary rule, further statements concerning the vehicle and its contents would constitute derivative evidence also subject to the exclusionary rule. Consequently, until there is a determination on the motion to suppress, we object to providing further information for the reason that such further information would be the product of the original search and seizure that we believe violated by [sic] constitutional rights.

       7. We request that the vehicle and its contents be returned to Jean Carlos Herrera and Fernando Rodriguez . . . .

Herrera signed the answer, but Rodriguez did not. In addition to the answer, Herrera filed a motion to suppress evidence. Herrera claimed the traffic stop was unlawful at its inception and in its scope. Herrera also filed a supplemental motion to suppress, arguing the subsequent search was unconstitutional because it was granted pursuant to a defective application and because probable cause was based solely on Rodriguez obtaining counsel to reclaim his vehicle.

Herrera's claims were resolved in February 2016. At that time, the district court granted the State's motion to dismiss Herrera's claim on the ground Herrera's answer failed to comply with statutory pleading requirements.[1] The district court denied Herrera's motion to suppress evidence, concluding the issue was moot because Herrera had not filed a proper answer and thus had no standing to challenge the forfeiture. Herrera timely filed his appeal.

Rodriguez's claim was resolved shortly after Herrera's claim. The prosecutor notified the district court the State no longer had any objection to the return of the Expedition to Rodriguez. The claim was resolved without any

---

[1] The district court labeled the motion a "motion to dismiss," which conveys the gravity of the motion but suggests the defendant is bringing the motion. *See Shumate v. Drake Univ.*, 846 N.W.2d 503, 507 (Iowa 2014) (discussing contours of motions to dismiss). Other cases label the strategy a motion for summary judgment, s*ee United States v. $17,900 in U.S. Currency*, 200 F. Supp. 3d 132, 137 (D.D.C. 2016), or a motion to strike, *see United States v. $25,790 in U.S. Currency*, No. AW-09-3283, 2010 WL 2671754, at *2 (D. Md. July 2, 2010) ("[I]f a claimant has failed to file a qualifying claim within the time limits allowed by law, the district court should strike the answer on the pleadings and enter a default judgment for the government."). The name may be less important than the substance of the motion. *See State v. $3,356,183.00 in U.S. Currency*, 894 So. 2d 339, 346 (La. Ct. App. 2004) ("The procedural method chosen by the State was a mechanism to challenge [the claimant's] standing to assert the purported claim in light of his previous disavowal of any ownership interest in the subject property. The particular name by which the substance of the motion is denominated, we find incidental.").

hearing on Rodriguez's claim. Rodriguez's counsel sought attorney's fees pursuant to section 809A.12(7), contending he was a prevailing party within the meaning of the statute. *See* Iowa Code § 809A.12(7) ("The agency or political subdivision bringing the forfeiture action shall pay the reasonable attorney fees and costs, as determined by the court, incurred by a claimant who prevails on a claim for exemption in proceeding under this chapter."); *see also* Iowa Code § 809A.5(1) (defining exempt property to include property belonging to an innocent owner). The district court denied the fee claim. Rodriguez timely filed his appeal.

II.

Our review of forfeiture proceedings is for correction of errors at law. *See In re Young*, 780 N.W.2d 726, 727 (Iowa 2010). To the extent claimants raise constitutional issues, our review is de novo. *See id.*

A.

We first address Herrera's claim. An in rem asset forfeiture proceeding initiated pursuant to chapter 809A is a civil proceeding. *See In re Aronson*, 440 N.W.2d 394, 397 (Iowa 1989). An owner or interest holder in the property can contest the forfeiture proceeding by filing an answer to the petition. *See* Iowa Code § 809A.13(3). The statute sets forth the required contents of the answer:

> The answer shall be signed by the owner or interest holder under penalty of perjury and shall be in accordance with [Iowa Rule of Civil Procedure] 1.405 and shall also set forth the following:
> (a) The caption of the proceedings and identifying number, if any, as set forth on the notice of pending forfeiture or complaint and the name of the claimant.
> (b) The address where the claimant will accept mail.
> (c) The nature and extent of the claimant's interest in the property.

(d) The date, the identity of the transferor, and the circumstances of the claimant's acquisition of the interest in the property.

(e) The specific provision of this chapter relied on in asserting that it is not subject to forfeiture.

(f) All essential facts supporting each assertion.

(g) The specific relief sought.

Iowa Code § 809A.13(4).

There is not a legitimate dispute here that Herrera's answer failed to comply with section 809A.13(4). Specifically, Herrera failed to identify the date he obtained an interest in the property at issue, the identity of the transferor, and the circumstances of acquisition as required by paragraph (d). He failed to identify any statutory provision supporting his claim the property was not subject to forfeiture, contrary to paragraph (e). He also failed to identify the essential facts supporting his assertions, contrary to paragraph (f). Under the circumstances, we cannot conclude Herrera complied with the statutory provision at issue.

Herrera contends his failure to comply with the statute should be excused. Specifically, he contends the traffic stop was unlawful and any evidence obtained as a result of the traffic stop, including derivative evidence, should be suppressed. He further contends the averments required by statute to be set forth in the answer would be derivative of the traffic stop and obtained in violation of his Fifth Amendment privilege. He further contends that ordering forfeiture of the property to the State is an unconstitutional penalty for invoking his Fifth Amendment privilege. In sum, Herrera argues the statute forces him to choose between asserting his constitutional rights and forfeiting his property and waiving his constitutional rights to avoid forfeiting his property but potentially incriminating

himself. Because of this choice, Herrera contends we should construe the statute to allow the suppression claim to be decided on the merits before requiring the compliance with the section 809A.13(4).

We reject the premise that any statements Herrera would have to make to file a proper answer were derivative of the purportedly illegal traffic stop. While the traffic stop was a but-for cause of the need to file an answer to the resulting forfeiture proceeding, any statements made in support of a claim to the forfeited property are not derivative within the meaning of the relevant case law. Specifically, any averments set forth in the answer would not be made by exploitation of the initial illegality:

> Duchi has suggested another basis for upholding the district court's decision that is closely akin to the compelled testimony argument. He maintains that he gave testimony at Conrad's trial as a result of the illegal search and seizure, so the testimony should be suppressed as the "fruit of the poisonous tree." Conrad had made a motion to suppress the evidence, as had Duchi. As in the Duchi trial, suppression was denied, albeit erroneously. Had the district court properly suppressed the evidence prior to Conrad's trial, Duchi argues, then charges would never have been brought against Conrad and he would not have been forced to testify on her behalf.
>
> Accepting for the moment the argument that charges would never have been raised against Conrad had the evidence been suppressed, a proposition that is not without doubt, it is clear that Duchi's testimony is not sufficiently related to the initial illegality to warrant imposition of the exclusionary rule. In *New York v. Harris*, 495 U.S. 14, 110 S. Ct. 1640 (1990), the Supreme Court expanded on a theme which it first intimated in *United States v. Crews*, 445 U.S. 463 (1980). The Court in both cases emphasized that evidence, whether testimonial or tangible, is the fruit of the poisonous tree and thus suppressible only if the authorities have obtained the evidence through "exploitation" of the initial illegality. *Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963). In *Harris*, the majority determined that a statement obtained at the police station after an unconstitutional warrantless arrest in the home, *see Payton v. New York*, 445 U.S. 573 (1980), was not related to the underlying illegality and should not have been

suppressed. The Court held that *Brown v. Illinois*, 422 U.S. 590 (1975), was distinguishable because in that case the incriminating statements were taken after an arrest without probable cause. As a result, the defendant was not properly in custody and therefore any statements he made while illegally detained were viewed as derivative of the illegality. In contrast, the defendant in *Harris* did not make his statements during the course of the illegal warrantless entry and was not being held illegally at the time he made the damaging statements to the police. Accordingly, the majority concluded that the statements bore an insufficient relation to the underlying infraction to warrant exclusion.

*Harris* demonstrates that for testimony or evidence to be considered the fruit of an illegal search, it must be directly or indirectly attributable to the constitutional violation. In *Harris*, even though the illegal entry arrest was a "but for" cause of the later statements in that without the illegal arrest no statements would have been made, it was not the proximate cause of the statements because the statements were not obtained during the unconstitutional entry into the home.

*United States v. Duchi*, 944 F.2d 391, 395 (8th Cir. 1991).

Rejecting this premise resolves only part of the issue. The question still arises whether Herrera should be excused from filing a compliant answer to protect an independent assertion of his Fifth Amendment privilege. There is some authority in support of Herrera's contention. In *Wohlstrom v. Buchanan*, 884 P.2d 687, 689 (Ariz. 1994), the Supreme Court of Arizona held that striking the petitioner's claim to property violated the Fifth Amendment to the Federal Constitution and the parallel provision of the Arizona Constitution where the petition failed to comply with a similar statutory provision. The court reasoned that "by invoking his right against self-incrimination, petitioner lost the ability to intervene in the proceedings, virtually assuring a forfeiture." *Wohlstrom*, 884 P.2d at 689. The court reasoned this was an unconstitutional penalty for invoking the right to silence. *See id.*

There is also contrary authority. The Louisiana Court of Appeals rejected a similar claim:

> While it is true that the answers to such questions could be self-incriminating or lead to prosecution for perjury or false-swearing, the statute does not violate any constitutional guarantees. If one does not wish to incriminate himself or subject himself to prosecution for perjury or false swearing, he simply does not file a claim . . . as the filing of such a claim is not required. However, if a claim is filed under the statute, it must conform to the statute's requirements.

*State v. $8,000.00 in U.S. Currency*, 827 So. 2d 634, 639 (La. Ct. App. 2002).

The Georgia Court of Appeals also rejected a similar claim. We quote from that case at length:

> Under [the Georgia analogue to section 809A.13(4)], the answer filed by an owner of property which asserts a claim against the property "must set forth: . . . [t]he date, identity of transferor, and circumstances of the claimant's acquisition of the interest in the property. . . ." Loveless did not include in his Answer the date of the transfer of the cash, the identity of the transferor, or the circumstances of his acquiring the cash. He thus failed to satisfy the specific statutory pleading requirements regarding factual information that must be included in claims or answers filed by those claiming interests in seized property. Accordingly, the court did not err by striking Loveless's Answer as legally insufficient and by entering a default judgment of forfeiture.
>
> We find unconvincing Loveless's argument that the privilege set out in the Fifth Amendment and in [a Georgia statute providing for the right against self-incrimination] overrides the clear and well-settled requirement that, to be sufficient, an answer in a civil forfeiture proceeding must include the information requested in [the 809A.13(4) analogue]. Loveless cites no Georgia cases on point that support his argument. We point out that
>
>> there is no blanket Fifth Amendment right to refuse to answer questions in noncriminal proceedings. The privilege must be specifically claimed on a particular question and the matter submitted to the court for its determination as to the validity of the claim . . . . The questions must at the very least be considered on an individual basis and answered accordingly.
>> . . . .

> Loveless also complains that the trial court erred by striking his Answer when he had raised therein a sufficient defense, namely that the search and seizure occurred in violation of the Fourth Amendment. However, the Answer did not include those factual disclosures that the statute required. In the absence of a legally sufficient answer, the trial court was without authority to consider the suppression issue.
>
> The Answer filed was insufficient, and the court did not err by striking it. Upon striking the answer, the court was authorized to order the disposition of the seized property.

*Loveless v. State*, 786 S.E.2d 899, 901–02 (Ga. Ct. App. 2016) (citations omitted).

We think the latter cases reach a better resolution of the issue, and we adopt the reasoning as our own. In addition to the reasons set forth above, we also conclude the result is dictated by the text of the controlling statute. Section 809A.13 is a special pleading statute, and it provides the answer to an in rem forfeiture complaint "shall" contain the required information. The use of the word "shall" denotes these requirements are mandatory. *See* Iowa Code § 4.1 (providing the word "shall" imposes a duty); *State v. Klawonn*, 609 N.W.2d 515, 522 (Iowa 2000) ("Additionally, we have interpreted the term "shall" in a statute to create a mandatory duty, not discretion."). There is no exception identified in the statute, and our court has previously said the statutory requirements are a "special statutory limitation" that "we are not at liberty to overlook." *In re Prop. Seized for Forfeiture from Foley*, No. 16-1676, 2017 WL 3525221, at *2 (Iowa Ct. App. Aug. 16, 2017).

We also note the most relevant Iowa authority dictates the conclusion that Herrera is not entitled to any relief. In *Aronson*, 440 N.W.2d at 395, the supreme court addressed a very similar issue. That case concerned the forfeiture of

personal property seized at a cockfight. *See Aronson*, 440 N.W.2d at 395. Fifty-seven persons sought return of the property, but they each exercised their Fifth Amendment right not to testify at the forfeiture hearing and identify any interest in the seized property. *See id.* at 396. The district court forfeited the property, and the supreme court affirmed the district court. *See id.* at 398.

Two separate aspects of the *Aronson* decision are relevant here. The first aspect resolves the issue of whether forfeiture of the property is a penalty for the exercise of constitutional rights. The *Aronson* court relied on and quoted *Baker v. United States*, 722 F.2d 517 (9th Cir. 1983), in reaching its holding. The *Aronson* court quoted with approval the language in *Baker* specifically rejecting the argument that noncompliance with the forfeiture statute should be allowed because forcing litigants "to choose between their privilege and their lawsuit makes assertion of the privilege 'costly.'" *Aronson*, 440 N.W.2d at 398 (quoting *Baker*, 722 F.2d at 518). The *Aronson* court's rejection of the penalty argument undermines the central premise of the *Wohlstrom* decision.

In addition to rejecting the penalty argument, the *Aronson* court held the claimants lacked standing to contest the forfeiture:

> Defendants have failed to prove their interest in the property to be forfeited as required by section 809.9. We hold that in this civil proceeding various claims by defendants of violation of their constitutional rights are moot in the face of their failure to have standing to contest the forfeiture. The district court's order on forfeiture is affirmed.

*Id.* at 398. Similarly, Herrera failed to comply with section 809A.13(4) and cannot contest the forfeiture.

Herrera attempts to distinguish *Aronson* on the ground that he does have standing to contest the forfeiture proceeding. The distinction is unavailing because it fails to account for the difference between prudential standing and statutory standing. The former requires a "specific personal or legal interest in the litigation" and an injury. *See Godfrey v. State*, 752 N.W.2d 413, 417–18 (Iowa 2008). The latter requires an assertion of a cognizable interest in accord with the statute. *See, e.g., Lexmark Int'l v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 n.4 (2014) (distinguishing between statutory standing and prudential standing); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n.2 (1998) (discussing distinction between constitutional standing and statutory standing).

Herrera is undoubtedly correct that he has prudential standing to challenge the forfeiture. The litigants in *Aronson* invoked their Fifth Amendment rights and refused to make any statement regarding the property at issue. In contrast, Herrera asserted under the penalty of perjury that he was "in lawful possession of the 1999 Ford Expedition, soft serve ice cream machine, pelican case, cordless drill and battery, vacuum pump and U.S. Currency identified in the complaint as being subject to forfeiture and ha[s] a legal ownership and possessory interest in those items." Because Herrera asserted a specific legal interest in the property at issue and an injury from its forfeiture, he has prudential standing.

But Herrera does not have statutory standing to contest the forfeiture. Statutory standing addresses the question of whether a particular plaintiff—or, in this case, claimant—can assert a cause of action or claim under the statute at

issue. *See Steel Co.*, 523 U.S. at 97 n.2 (defining statutory standing). *Aronson*, although admittedly ambiguous, involves a question of statutory standing. The court noted the litigants failed to prove an interest in the property "as required by section 809.9." *Aronson*, 440 N.W.2d at 394. Herrera, like the litigants in *Aronson*, failed to comply with the statutory provisions to contest the in rem forfeiture proceeding. He is thus not a particular litigant authorized by statute to contest this in rem forfeiture proceeding.

We reach this conclusion with a caveat. Although we have interpreted *Aronson's* use of the term "standing" to mean "statutory standing," it appears the real issue in *Aronson* and in this case is not so much statutory standing but rather statutory compliance. In other words, the real question presented is not whether Herrera has standing or statutory standing to contest this forfeiture proceeding, the real question is whether Herrera should be excused from meeting the statutory pleading requirement for constitutional reasons. We thus read *Aronson's* use of the term "standing" to mean the claimant failed to establish a threshold interest in the property in compliance with the statutory pleading requirements and the failure to meet the statutory pleading requirements was not excused by the assertion of constitutional challenges to pleading.

Because we conclude Herrera failed to file a proper answer, the district court did not err in declining to address the merits of Herrera's constitutional challenge to the traffic stop and subsequent searches.

The district court did err, however, in ordering the property forfeited. The district court dismissed Herrera's challenge to the property and ordered it

forfeited due solely to Herrera's noncompliance with the statute. This is not the remedy allowed by chapter 809A. The statute provides:

> [I]f a proper claim is not timely filed in an action in rem, or if a proper answer is not timely filed in response to a complaint, the prosecuting attorney may apply for an order of forfeiture and an allocation of forfeited property pursuant to section 809A.17. Under such circumstance and upon a determination by the court that the State's written application established the court's jurisdiction, the giving of proper notice, and facts sufficient to show probable cause for forfeiture, the court shall order the property forfeited to the State.

Iowa Code § 809A.16(3). While the district court found no proper answer had been filed, the district court failed to determine the State's application established facts sufficient to show probable cause for forfeiture. Absent such a determination, the order of forfeiture was improper. We thus remand this matter to allow the district court to make a probable cause determination in accord with section 809A.16(3).

## B.

We next address Rodriguez's claim for attorney's fees. We review awards of attorney's fees following forfeiture determinations for correction of errors at law. *See In re Prop. Seized from McIntyre*, 550 N.W.2d 457, 459 (Iowa 1996). We review questions of statutory interpretation for correction of errors at law. *State v. Allen*, 708 N.W.2d 361, 365 (Iowa 2006).

Rodriguez contends he was entitled to attorney fees under section 809A.12(7). That section provides:

> In any proceeding under this chapter, if a claim is based on an exemption provided for in this chapter, the burden of proving the existence of the exemption is on the claimant. However, once the claimant comes forward with some evidence supporting the existence of the exemption, the State must provide some evidence to negate the assertion of the exemption. The State's evidence

must be substantial, though not necessarily rising to the level of a preponderance of the evidence, and more than a simple assertion of the claimant's interest in the property. The agency or political subdivision bringing the forfeiture action shall pay the reasonable attorney fees and costs, as determined by the court, incurred by a claimant who prevails on a claim for exemption in a proceeding under this chapter.

The statute requires an exemption claim. *See In re Prop. Seized from Williams*, 676 N.W.2d 607, 613–14 (Iowa 2004). An innocent-owner claim is one of exemption. *See* Iowa Code § 809A.5(1). We have previously read the legislative intent behind this section to allow fee-shifting "whenever a claimant successfully establishes a section 809A.5 exemption." *In re Mirzai*, No. 11-0540, 2011 WL 6672598, at *4 (Iowa Ct. App. Dec. 21, 2011).

The State argues Rodriguez did not "prevail" on any claim; the State "merely made a discretionary decision that, given the low value of the vehicle, it did not wish to expend the resources to pursue the forfeiture." Rodriguez argues a party prevails "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff," *Dutcher v. Randall Foods*, 546 N.W.2d 889, 895 (Iowa 1996), or when a party succeeds "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit," *Farrar v. Hobby*, 506 U.S. 103, 109 (1992). Even without a "final determination on the merits," a party may be a "prevailing party." *In re Marriage of Roerig*, 503 N.W.2d 620, 622 (Iowa Ct. App. 1993) ("It is well-established that statutory or contractual provisions providing for an award of attorney's fees to the prevailing party in litigation encompass defendants in suits which have been voluntarily dismissed.").

Even if we were to conclude the district court erred in concluding Rodriguez was not a prevailing party, we need not remand this matter for further proceedings. In addition to finding Rodriguez's claim legally invalid, the district court also found Rodriguez had not incurred any attorney's fees:

> In addition to the finding by this Court that Rodriguez is not a prevailing party, this Court finds that every cent of attorney's fees requested by Mr. Stowers is attributable to his representation of Herrera. At best, Rodriguez was a tag-along gaining the benefit of Mr. Stower's vigorous representation of Herrera.

Our review of the district court's determination of the amount of attorney's fees is for an abuse of discretion. *See Schaffer v. Frank Moyer Constr., Inc.*, 628 N.W.2d 11, 24 (Iowa 2001). An applicant for attorney's fees has the burden to prove the services were reasonably necessary and the charges were reasonable in amount. *See id.* at 23. The district court is in the "'ideal position to judge the necessity of time and effort spent by counsel and the rationality of the relationship between the services rendered' and the causes of action and other matters involved in this case." *Id.* (citation omitted).

In our review of the file, we cannot say the district court abused its discretion in finding counsel's time spent on this matter related to Herrera's claim and not Rodriguez's claim. Rodriguez's counsel made no effort to present an itemization of his time establishing what time was spent on Herrera's case and what time was spent on Rodriguez's case. Instead, counsel submitted an affidavit setting forth the total fees for the matter, including work on Herrera's case. Rodriguez did not meet his burden of proving his fee claim. Under the circumstances, we cannot say the district court abused its discretion in finding the fees requested and presented to the district court in the fee motion and

affidavit were solely attributable to the representation of Herrera where counsel made no effort to itemize the fees. We decline Rodriguez's request for appellate attorney fees.

III.

For the foregoing reasons, we affirm the judgment of the district court in part, reverse in part, and remand for further proceedings not inconsistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**