# IN THE SUPREME COURT OF IOWA

No. 16–0440

Filed May 25, 2018

**IN THE MATTER OF PROPERTY SEIZED FROM JEAN CARLOS HERRERA AND FERNANDO RODRIGUEZ,**

**JEAN CARLOS HERRERA** and **FERNANDO RODRIGUEZ,**

   Appellants.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Pottawattamie County, Gregory W. Steensland, Judge.

Driver and owner of vehicle in civil forfeiture proceeding seek further review of court of appeals decision affirming in part district court ruling rejecting driver's challenges to seizure of cash and denying owner's application for attorney's fees. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED; CASE REMANDED WITH INSTRUCTIONS.**

Dean Stowers of Stowers & Sarcone PLC, West Des Moines, for appellants.

Thomas J. Miller, Attorney General, Bridget A. Chambers, Assistant Attorney General, Matt Wilber, County Attorney, and Shelly Sudmann, Assistant County Attorney, for appellee.

**WATERMAN, Justice.**

This appeal from civil forfeiture proceedings presents several issues: (1) whether invoking the Fifth Amendment privilege against self-incrimination excuses compliance with statutory pleading requirements for establishing ownership in cash seized by the State, including identifying the source of the funds, (2) whether the district court must decide motions to suppress evidence before adjudicating forfeiture claims, and (3) whether a claimant is entitled to attorney fees as a prevailing party under the forfeiture statute when the State ultimately consented to the return of his or her property without an adjudication on the merits.

The claimants' property was seized after a drug interdiction traffic stop on Interstate 80. No criminal charges were filed, but the State sought forfeiture of the impounded vehicle and $44,990 discovered in a hidden compartment after issuance of a search warrant. Claimants' pleadings seeking return of the cash and vehicle omitted information required by Iowa Code section 809A.13(4)(*d*) (2015) but raised constitutional objections to the validity of the search and the statute's disclosure requirements. The district court dismissed the driver's claims for noncompliance with the statute's pleading requirements, and the State consented to return of the vehicle to the owner after months of contested litigation. The district court denied the owner's claim for attorney fees, and both claimants appealed. We transferred the case to the court of appeals, which affirmed the district court in part but remanded for a determination on whether probable cause supported the forfeiture. We granted the claimants' application for further review.

For the reasons explained below, we hold that assertion of the Fifth Amendment privilege against self-incrimination excuses compliance with

forfeiture threshold pleading requirements in Iowa Code section 809A.13(4)(*d*), such as identifying the source of cash. We conclude the district court erred by failing to rule on the claimants' motions to suppress evidence before adjudicating the forfeiture claims and erred by overruling Fifth Amendment objections to the pleading requirements. We further hold the vehicle owner was a prevailing party entitled to recover his reasonable attorney fees under the forfeiture statute notwithstanding the lack of an adjudication on the merits. We remand the case with instructions.

## I.  Background Facts and Proceedings.

On September 12, 2015, Sergeant Kevin Killpack, a motor vehicle enforcement officer with the Iowa Department of Transportation (IDOT), was driving east on Interstate 80 when he noticed a westbound 1999 Ford Expedition with New York license plates. He had been trained that this particular year, make, and model was commonly used for transporting narcotics and currency. Sergeant Killpack changed directions and caught up with the Expedition, which he paced at seventy-four miles per hour in a seventy mile-per-hour zone. He pulled the vehicle over for speeding.

As Sergeant Killpack walked up to the Expedition, he knelt by the rear wheel well and looked underneath using his flashlight. He found a fabricated compartment attached below the rear cargo area. While the rest of the undercarriage was rusty, this aftermarket alteration looked new. Sergeant Killpack asked for registration, insurance, and the driver's licenses of the driver, Jean Carlos Herrera, and the passenger, Bryan Riccaldo. Sergeant Killpack asked Herrera to accompany him to his patrol car, and Herrera complied. Sergeant Killpack noted that neither Herrera nor Riccaldo was the registered owner of the Expedition.

When he asked Herrera who owned it, Herrera said it was a friend of his family but he only knew the owner's first name, Fernando.

Further inquiries raised discrepancies in the stories offered by the Expedition's driver and passenger. Herrera told Sergeant Killpack that he and Riccaldo were traveling from New York to Los Angeles to attend a trade show to promote their screen printing business. Herrera said that he had been in business with Riccaldo for two years, yet he was unable to name the business. Herrera claimed that the trade show, called "Agenda," started in two weeks, but Sergeant Killpack performed a Google search without finding that trade show. He so informed Herrera, who began to search for the event through his smartphone. Herrera then changed his story, claiming that the trade show was called "The Venue" and would take place a month later.

Sergeant Killpack spoke with Riccaldo separately. He asked Riccaldo if the men were going to a trade show; Riccaldo said no. Instead, Riccaldo said they were traveling to Los Angeles to visit family and to deliver the ice cream machine to a man named "Bogar."

Sergeant Killpack issued Herrera a warning for speeding and explained that he was free to leave once the citation was printed. But as Herrera opened the door to get out of the police car, Sergeant Killpack asked if he could ask Herrera more questions. Herrera said yes. Sergeant Killpack explained that the two men had given different stories about their trip and that he was concerned that they were involved in transporting narcotics. Sergeant Killpack asked Herrera to consent to a search of the vehicle for narcotics and large sums of money; Herrera refused. Sergeant Killpack explained that he felt he had enough reasonable articulable suspicion to perform a "K-9 free air sniff." The trained police dog was already at the scene and alerted to the odor of

narcotics. Sergeant Killpack and two Pottawattamie County deputies searched the Expedition. Before the search, Herrera claimed $2000 in cash in the center console. The currency was held together with multiple rubber bands. Riccaldo claimed $800 cash in his own front pants pocket. This cash was also held together with rubber bands.

Sergeant Killpack inspected the ice cream machine. He noted the electrical cord had been cut off; the internal components of the ice cream machine had been removed leaving an empty, opaque storage area. The officers found a "boost phone"—a mobile phone with only one number programmed into it—as well as a vacuum pump, a rivet gun and rivets, and a battery for a cordless drill. These tools could have been used to install the hidden compartment mounted on the undercarriage. And they found a "Pelican case" that contained drug paraphernalia and remnants of marijuana. Herrera admitted to smoking marijuana the day they left New York. Sergeant Killpack pulled the carpet back in the cargo area and found the access hole to the aftermarket compartment he had seen earlier. This compartment was empty.

The Expedition was towed to the IDOT maintenance garage in Council Bluffs for further examination. The officers transported Herrera and Riccaldo there. Captain Tom Bruun assisted Sergeant Killpack in a further search of the vehicle, but they did not find any narcotics or money. Sergeant Killpack told Herrera that the police were going to seize the vehicle and the items found therein. He gave Herrera an evidence receipt and a notice of forfeiture. Herrera and Riccaldo called a cab to take them to the Omaha airport. They were allowed to depart with the cash they were claiming.

Fernando Rodriguez of New York is the registered owner of the Expedition. After his vehicle was seized, Rodriguez obtained counsel to

reclaim the vehicle. On September 18, Rodriguez's attorney emailed the county attorney to let the State know that "the owner has an innocent owner position and will be entitled to attorney fees should he prevail in that position." The attorney noted that the attorney fees are provided by statute and concluded that "the fees are going to be greater than the vehicle value, so this might be one to let go."

After learning of this email, Sergeant Killpack applied for and obtained a search warrant. In his application, Sergeant Killpack stated that he "ran a Kelly Blue Book valuation on th[e] vehicle and found that in its current condition [it] would be worth $2,132 for resale." The application continued,

> If a person looked at this situation in a cost benefit analysis it does not make financial sense to spend a significant amount of money, in attorney fees, in an attempt to reclaim a vehicle worth $2,132. The attorney fees would well surpass the value of the vehicle very quickly. Through my training an[d] experience a person willing to spend a significant amount of money to get their low value vehicle back knows that there is something much more valuable still inside the vehicle that has not been found by law enforcement in the initial search.

> I spoke to Captain Bruun, researched additional concealment locations in this type of vehicle, and we discussed all the areas that we searched. After our conversation we came to the conclusion that we missed three areas that are known concealment areas within a motor vehicle of this year, make and model. Those areas are the spare tire, the firewall and the underneath side of the center consul [sic]. It is my belief that these three areas contain either narcotics and or a large sum of US currency gained from narcotics trafficking. The unfound, high value, commodities would completely justify the significant cost and effort to get a low value vehicle returned.

The application for the search warrant failed to mention that Rodriguez had argued he was entitled to attorney fees from the State as an innocent owner. The district court issued the search warrant. During the second

search of the vehicle, Sergeant Killpack found $44,990 hidden in a false compartment inside the center console.

The State filed an in rem forfeiture complaint on October 1, seeking to forfeit the "1999 Ford Expedition, soft serve ice cream machine, pelican case, cordless drill and battery, vacuum pump and United States Currency." The State alleged the property was forfeitable as "drug proceeds" or property "used in the transport of drugs." In their combined answer filed on November 5, Herrera and Rodriguez stated,

1. I, Fernando Rodriguez, am the owner of the 1999 Ford Expedition identified in the complaint as being subject to forfeiture and an interest holder in the property seized therefrom, including the U.S. Currency in the vehicle.

2. I, Jean Carlos Herrera, was in lawful possession of the 1999 Ford Expedition, soft serve ice cream machine, pelican case, cordless drill and battery, vacuum pump and U.S. Currency identified in the complaint as being subject to forfeiture and have a legal ownership and possessory interest in those items.

3. We would ask that all mail in this matter be sent to our attorney . . . .

4. With this answer we are also filing a motion asserting that the vehicle stop, the subsequent detention and seizure, and the search of that vehicle, violated the prohibition against unreasonable searches and seizures found in the Fourth Amendment to the United States Constitution and the corresponding provision of the Iowa Constitution.

5. The exclusionary rule under the Fourth Amendment and Iowa Constitution applies in forfeiture proceedings. *See In the Matter of Property Seized from Sharon Kay Flowers*, 474 N.W.2d 546 (Iowa 1991).

6. By virtue of the application of the exclusionary rule, further statements concerning the vehicle and its contents would constitute derivative evidence also subject to the exclusionary rule. Consequently, until there is a determination on the motion to suppress, we object to providing further information for the reason that such further information would be the product of the original search and seizure that we believe violated . . . constitutional rights.

    7. We request that the vehicle and its contents be returned to Jean Carlos Herrera and Fernando Rodriguez, since it belongs to them.

While the answer concluded, "We certify under penalty of perjury and pursuant to the laws off the State of Iowa that the preceding is true and correct," only Herrera signed the answer. Rodriguez did not.

Two weeks later, Herrera filed a motion to suppress the evidence and return the property. He argued that the stop of the vehicle and the subsequent detention, search, and seizure were conducted in violation of the Fourth Amendment and article I, section 8 of the Iowa Constitution. Herrera later filed a supplemental motion to suppress, claiming that the second search of the vehicle was unconstitutional because the warrant application was defective and probable cause was based solely on Rodriguez obtaining counsel to reclaim the vehicle.

On December 10, the court held a hearing on Herrera's motion to suppress. The State began by arguing that the motion to suppress should not proceed because the claimant had not complied with the statutory requirements for filing an answer to the forfeiture proceeding. Specifically, the State pointed out that the claimant did not state "the nature and extent of the claimant's interest in the property" or "the date, the identity of the transferor, and the circumstances of the claimant's acquisition of the interest in the property."

The attorney for Rodriguez and Herrera responded that the answer was sufficient until the motion to suppress was decided. He acknowledged that if the motion was denied, his clients "could be required at that point to come back in and amend their claim and their answer." But the attorney reiterated his position that it was "not appropriate to require detailed disclosures when there's a Fourth Amendment issue that has to be taken up first." The court took the

matter under advisement and gave the parties the opportunity to submit briefs. The court heard Sergeant Killpack's testimony.

That same day, Rodriguez filed a claim for return of the vehicle. He argued that the vehicle did not meet the definition of property subject to forfeiture under Iowa Code section 809A.4 and that the vehicle was exempt from forfeiture under section 809A.5.

Herrera and the State submitted briefs before the court issued its order on February 9, 2016. The district court determined that because Herrera had not met the procedural requirements of section 809A.13(4), he was not entitled to a forfeiture hearing. The court concluded that the property claimed to be owned by Herrera was forfeited to the State. Additionally, the court denied Herrera's motion to suppress, finding the issue moot because Herrera had not filed a proper answer and therefore had no standing to challenge the forfeiture. Herrera timely appealed.

In its February 9 order, the district court did not decide Rodriguez's claim for the return of his vehicle because the matter had not been set for hearing. The order provided that Rodriguez's claim should be scheduled for a hearing. Shortly thereafter, Rodriguez filed a motion to suppress.

On February 23, the court found "there is no objection by the state to claimant Fernando Rodriguez's claim for return of property, specifically his 1999 Ford Expedition." The court granted Rodriguez's claim and canceled the hearing on the matter. Rodriguez then moved for attorney fees and expenses in the amount of $8956.96 under Iowa Code section 809A.12(7), contending he was a prevailing party within the meaning of the statute. Dean Stowers, the attorney for both Rodriguez and Herrera, submitted an attorney fee affidavit in which he clarified that

the attorney fees for representation of both clients totaled $8232.30 and the expenses totaled $724.66. He concluded,

> The work on this case would have been nearly the same had I only represented Mr. Rodriguez because the suppression issues were all part of the same overall factual scenario and legal backdrop. I believe the total fees are reasonable given all the issues at play in this matter and that the time and work was reasonable.

Stowers did not specify what time was spent on Rodriguez's case alone.

The State filed a motion to reopen the case but withdrew the motion at a hearing held on March 24. The court heard arguments on the motion for attorney fees at that time. The court denied the motion for attorney fees, concluding that Rodriguez was not a "prevailing party" and that the attorney fees requested by Rodriguez's attorney were attributable to the attorney's representation of Herrera. Rodriguez timely appealed.

Rodriguez filed a motion to consolidate his appeal with Herrera's appeal, and we granted the motion. We then transferred the consolidated case to the court of appeals.

The court of appeals concluded that Herrera failed to file a proper answer, so the district court correctly declined to address Herrera's constitutional challenge to the stop and searches. But the court of appeals determined the district court "failed to determine the State's application established facts sufficient to show probable cause for forfeiture," as required by statute.[1] The court of appeals remanded the

---

[1]Iowa Code section 809A.16(3) provides,

Except as provided in subsection 1, if a proper claim is not timely filed in an action in rem, or if a proper answer is not timely filed in response to a complaint, the prosecuting attorney may apply for an order of forfeiture and an allocation of forfeited property pursuant to section 809A.17. Under such circumstance and upon a determination by the court that the state's written application established the court's jurisdiction, the

case to the district court to make a probable cause determination. The court of appeals affirmed the district court's denial of Rodriguez's motion for attorney fees, concluding that Rodriguez did not meet his burden of proving his fee claim. Herrera and Rodriguez applied for further review, which we granted.

## II. Standard of Review.

We review forfeiture proceedings for correction of errors at law. *In re Prop. Seized for Forfeiture from Young*, 780 N.W.2d 726, 727 (Iowa 2010). Our review of constitutional issues is de novo. *Id.* We review the district court's denial of attorney fees for abuse of discretion. *In re Marriage of Kimbro*, 826 N.W.2d 696, 698 (Iowa 2013). "We reverse the district court's ruling only when it rests on grounds that are clearly unreasonable or untenable[; a] ruling is clearly unreasonable or untenable . . . 'when it is based on an erroneous application of the law.'" *Id.* at 698–99 (citation omitted) (quoting *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 484 (Iowa 2012)).

## III. Analysis.

We confront the interplay between statutory pleading requirements for in rem civil forfeiture proceedings in Iowa Code chapter 809A and Herrera's constitutional rights protecting against unreasonable searches and seizures and compelled self-incrimination. We begin with an overview of chapter 809A. We next address Herrera's Fifth Amendment objections to statutory pleading requirements. We conclude the district court must first rule on motions to suppress evidence the State is using to support its forfeiture claims. This outcome is consistent with the

---

giving of proper notice, and facts sufficient to show probable cause for forfeiture, the court shall order the property forfeited to the state.

Iowa Code § 809A.16(3).

statutory framework under which the State bears the burden to prove grounds for forfeiture, before the burden shifts to the claimant to establish a defense to forfeiture. We next hold the court may not enforce the specific disclosure requirements of Iowa Code section 809A.13(4)(*d*) over the claimant's Fifth Amendment objection. Finally, we determine that a claimant who recovers his property when the state withdraws its objection after months of contested litigation without an adjudication on the merits may be a prevailing party entitled to an award of attorney fees.

**A. The Statutory Framework.** In Iowa, forfeiture is a civil proceeding. *In re Prop. Seized from Aronson*, 440 N.W.2d 394, 397 (Iowa 1989); *see In re Prop. Seized for Forfeiture from Williams*, 676 N.W.2d 607, 613 (Iowa 2004). Iowa Code chapter 809A governs in rem forfeiture proceedings. *In re Young*, 780 N.W.2d at 727–28. "Forfeitures are not favored under the law[,] and this court strictly construes statutes allowing forfeitures." *In re Williams*, 676 N.W.2d at 612.

The prosecuting attorney brings an in rem action "pursuant to a notice of pending forfeiture or verified complaint for forfeiture." Iowa Code § 809A.13(2). An owner or interest holder in property can contest the forfeiture proceeding by filing an answer to the complaint, as provided in section 809A.13.

We addressed an as-applied challenge to the constitutionality of Iowa Code section 809A.13(3) (2007) in *In re Young*, 780 N.W.2d at 727. We explained that the filing of a verified complaint "amounts to a direct resort to courts rather than a process that involves the service of a notice of pending forfeiture and subsequent filing of claims and exemptions with the prosecuting attorney prior to invoking the judicial process." *Id.* at 728. Section 809A.13(3), which applied to all in rem forfeiture actions, then provided that "[o]nly an owner of or an interest holder in the

property who has timely filed a proper claim pursuant to section 809A.11 may file an answer in an action in rem." *Id.* (quoting Iowa Code § 809A.13(3)). Under section 809A.11, a claim must be filed "within thirty days after the effective date of notice of pending forfeiture." *Id.* (quoting Iowa Code § 809A.11). We explained,

> Where the prosecuting attorney commenced forfeiture pursuant to a verified complaint, however, there is no notice of pending forfeiture and no requirement that a claim be filed within thirty days. The only notice required for forfeiture of property pursuant to an original verified complaint is service of the verified complaint itself. Literally read, Iowa Code section 809A.13(3) appears to prohibit an owner or interested party from defending a forfeiture initiated pursuant to a verified complaint.

*Id.* We agreed with the parties "that a statutory scheme which would allow the forfeiture of property without notice and an opportunity to be heard would violate due process under the United States and Iowa Constitutions." *Id.* We concluded that applying the statute to forfeiture proceedings commenced by verified complaint would violate the due process rights of interested parties. *Id.* at 729 (affirming the district court's order granting the state's application for forfeiture because the district court gave Young the opportunity to file an answer, and Young declined to do so).

The legislature responded by amending section 809A.13(3) in 2013, striking the sentence that provided, "Only an owner of or an interest holder in the property who has timely filed a proper claim pursuant to section 809A.11 may file an answer in an action in rem." 2013 Iowa Acts ch. 41, § 1. The statute now states, "For the purposes of this section, an owner of or interest holder in property who has filed an answer shall be referred to as a claimant." Iowa Code § 809A.13(3) (2015).

Under section 809A.13,

[t]he answer shall be signed by the owner or interest holder under penalty of perjury and shall be in accordance with rule of civil procedure 1.405 and shall also set forth all of the following:

> *a.* The caption of the proceedings and identifying number, if any, as set forth on the notice of pending forfeiture or complaint and the name of the claimant.

> *b.* The address where the claimant will accept mail.

> *c.* The nature and extent of the claimant's interest in the property.

> *d.* The date, the identity of the transferor, and the circumstances of the claimant's acquisition of the interest in the property.

> *e.* The specific provision of this chapter relied on in asserting that it is not subject to forfeiture.

> *f.* All essential facts supporting each assertion.

> *g.* The specific relief sought.

Iowa Code § 809A.13(4). The statute's disclosure provisions are mandatory. *See* Iowa Code § 809A.13(4) ("The answer . . . *shall* also set forth all of the following . . . . (Emphasis added.)); *see also id.* § 4.1(30)(*a*) ("The word 'shall' imposes a duty."); *In re Marriage of Thatcher*, 864 N.W.2d 533, 539 (Iowa 2015) ("In a statute, the word 'shall' generally connotes a mandatory duty." (quoting *In re Det. of Fowler*, 784 N.W.2d 184, 187 (Iowa 2010))).

At the forfeiture hearing, the State had "the initial burden of proving the property is subject to forfeiture by a preponderance of the evidence." *Id.* § 809A.13(7).[2] If the State proves the property is subject

---

[2]In 2017, the legislature changed the state's burden of proof to clear and convincing evidence. 2017 Iowa Acts ch. 114, § 10 (codified at Iowa Code § 809A.13(7) (2018)). The amendment also changed the claimant's burden of proof so that the claimant is only required to make a prima facie showing that the exemption exists. *Id.* Finally, if the claimant makes such a showing, the amended statute requires the state to prove by clear and convincing evidence that the exemption does not apply. *Id.* The amendment only applies to forfeiture proceedings that began on or after July 1, 2017, *see id.* § 15, and therefore does not apply to this case in which the forfeiture complaint was filed on October 1, 2015.

to forfeiture, the claimant has the burden of proving by a preponderance of the evidence that one of the exemptions set forth in that chapter exists. *Id.*

The district court found Herrera's answer failed to comply with paragraphs (*c*) and (*d*) of section 809A.13(4). We must decide whether Herrera should be excused from complying with the requirements of section 809A.13(4) based on his assertion of his Fifth Amendment privilege against self-incrimination or his constitutional challenges to the validity of the searches and seizures. As we recently observed in *In re Property Seized from Li*, forfeiture statutes have faced increasing criticism in recent years. ___ N.W.2d ___, ___ (Iowa 2018) (citing *Leonard v. Texas*, ___ U.S. ___, ___, 137 S. Ct. 847, 848–49 (2017) (Thomas, J., statement respecting denial of certiorari) (acknowledging that civil forfeiture operations—which have become more "widespread and highly profitable" in recent decades—"frequently target the poor and other groups least able to defend their interests in forfeiture proceedings" and expressing skepticism over the constitutionality of the modern practice of civil forfeiture); *People ex rel. Hartrich v. 2010 Harley-Davidson*, ___ N.E.3d ___, ___, 2018 WL 915075, at *14 (Ill. Feb. 16, 2018) (Karmeier, C.J., dissenting) (emphasizing that "courts must be vigilant in safeguarding the rights of innocent persons who have legitimate interests in the property at issue")). Against that backdrop, we turn to issues presented in this appeal.

**B. Whether Invoking the Fifth Amendment Privilege Against Self-Incrimination Excuses Compliance with the Pleading Requirements of Section 809A.13(4).** Herrera claims that by invoking the Fifth Amendment privilege against self-incrimination, he is excused from providing the information required under section 809A.13(4)(*d*) in

his answer to the State's in rem forfeiture complaint. We agree and conclude the district court must first rule on Herrera's motion to suppress evidence before adjudicating the forfeiture claims.

1. *The district court must rule on motions to suppress before adjudicating the forfeiture claims.* As noted, the State has the initial burden of proving grounds for forfeiture. Herrera agues the district court should have first adjudicated his motion to suppress to determine what evidence was available to support the State's forfeiture claims. We agree.

We begin our analysis with *In re Aronson*, 440 N.W.2d at 395. In *Aronson*, the police seized property at a cockfight. *Id.* Criminal charges were filed against fifty-nine individuals from whom the property was seized. *Id.* The county attorney filed a notice of forfeiture, and the defendants filed claims for return of the property. *Id.* The state moved to dismiss the "defendants' claims based on their failure to identify specific ownership interests in the property as required by" statute. *Id.* In response, the defendants filed their own motion to dismiss the forfeiture proceeding and moved to continue the forfeiture hearing; the court denied the defendants' motions. *Id.* The defendants decided "to stand on their Fifth Amendment rights not to testify at the forfeiture hearing [and] declined to identify their interests in the seized property." *Id.*

In the criminal proceeding, the defendants filed a motion to suppress the evidence that had been seized. *Id.* The court denied the motion to suppress, finding the property had been legally seized. *Id.*

Following the forfeiture hearing, the court ordered forfeiture of the property. *Id.* Defendants appealed, arguing the district court erred by not postponing the civil forfeiture action until after the criminal trial. *Id.*

> The error predicated on the court's denial of a continuance is that defendants were deprived of their property without due process of law because they were compelled to choose to not

testify at the forfeiture hearing or risk incriminating themselves.

*Id.* at 396. We held the defendants lacked standing to contest the forfeiture because they failed to prove their interest in the property forfeited. *Id.* at 398. We relied on federal precedent holding that a person who invokes his or her Fifth Amendment right and refuses to allege a specific interest in the property seized lacks standing to contest the forfeiture. *Id.* at 397–98 (citing *United States v. Fifteen Thousand Five Hundred Dollars ($15,500.00) United States Currency*, 558 F.2d 1359, 1361 (9th Cir. 1977) ("Where the underlying action is a civil forfeiture suit, . . . none of the . . . bases for contesting the forfeiture is reached unless the threshold requirement of being a claimant is filled. This can be done only if the person desiring to defend the action claims an ownership or possessory interest in the property seized."); *Baker v. United States*, 722 F.2d 517, 518 (9th Cir. 1983) ("The plaintiffs are not 'claimants' because they have alleged no specific property interest in the forfeited items.")).

But, the defendants in *Aronson* claimed no interest in the property forfeited. By contrast, Herrera specifically claimed a possessory interest, stating,

> I, Jean Carlos Herrera, was in lawful possession of the 1999 Ford Expedition, soft serve ice cream machine, pelican case, cordless drill and battery, vacuum pump and U.S. Currency identified in the complaint as being subject to forfeiture and have a legal ownership and possessory interest in those items.

Herrera invoked his Fifth Amendment rights in refusing to provide the additional information required by section 809A.13(4). And he argued that the searches of the vehicle violated his rights under the Fourth

Amendment and article I, section 8 of the Iowa Constitution. He filed a motion to suppress the evidence obtained in the searches of the vehicle.

We hold that when, as here, the claimant claims a possessory interest, invokes his Fifth Amendment privilege, and files a motion to suppress, the district court must first rule on the suppression motion before adjudicating the forfeiture claims.

The outcome of the motion to suppress determines what evidence the state can rely on during the forfeiture proceeding. "In establishing a right to forfeiture, . . . the State may not rely on evidence obtained in violation of fourth amendment protections nor derived from such violations." *In re Flowers*, 474 N.W.2d at 548. *Flowers* stands for the proposition that the exclusionary rule applies in forfeiture proceedings; the state cannot use evidence obtained in violation of the Fourth Amendment in proving probable cause for forfeiture. *Id.* (acknowledging that multiple courts cited *One 1958 Plymouth Sedan v. Commonwealth*, 380 U.S. 693, 85 S. Ct. 1246 (1965), "for the proposition that the exclusionary rule applies to forfeiture proceedings"). If Herrera ultimately succeeds on his motion to suppress, the State will be unable to rely on the suppressed evidence in proving the probable cause required for the forfeiture.

Other courts accommodate a claimant's constitutional arguments by delaying the claimant's obligation to disclose required information. *See, e.g., United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 73–74, 91 (2d Cir. 2002) (affirming forfeiture rulings that first adjudicated Fourth Amendment challenges to search and seizure of property at issue). The United States Court of Appeals for the Sixth Circuit acknowledged that competing interests arise when claimants

assert their Fifth Amendment privileges in forfeiture proceedings. *United States v. U.S. Currency*, 626 F.2d 11, 15 (6th Cir. 1980).

> Clearly, appellees should not be compelled to choose between the exercise of their Fifth Amendment privilege and the substantial sums of money which are the subject of this forfeiture proceeding. On the other side of the coin, however, the government should not be compelled to abandon the forfeiture action which Congress, by enacting the statute, obviously intended to create. Therefore, the courts must seek to accommodate both the constitutional right against self-incrimination as well as the legislative intent behind the forfeiture provision.

*Id.* The Sixth Circuit allowed the district court to determine the appropriate accommodation on remand but suggested that "[t]he court might . . . stay the forfeiture proceedings until the completion of any criminal prosecutions, or until the relevant statutes of limitations for the federal and state criminal offenses have expired." *Id.* at 16–17; *see also United States v. $31,000.00 in U.S. Currency*, 872 F.3d 342, 355 (6th Cir. 2017) (reversing threshold standing ruling that dismissed claimant's answer for failing to plead with specificity basis for ownership interest).

The Court of Appeals of Georgia rejected a claimant's argument that the Fifth Amendment privilege and corresponding privilege under Georgia law "override[] the clear and well-settled requirement that, to be sufficient, an answer in a civil forfeiture proceeding *must* include the information requested" by statute. *Loveless v. State*, 786 S.E.2d 899, 901 (Ga. Ct. App. 2016). But the court explained, "Loveless was not compelled to give evidence for or against himself in order to answer the forfeiture petition, inasmuch as he could have requested a stay of the forfeiture proceeding while the criminal case was pending." *Id.* at 902.

The Arizona Supreme Court has held that a petitioner who asserted a possessory interest in the property had standing to challenge the forfeiture without disclosing information the petitioner considered

potentially incriminating.  *Wohlstrom v. Buchanan*, 884 P.2d 687, 689 & n.1 (Ariz. 1994).  The *Wohlstrom* court recognized that

> there may be times when, in order to establish a sufficient property interest, it will be necessary for a claimant to provide incriminating information.  Under those circumstances, other remedies may be appropriate, such as staying forfeiture proceedings pending the outcome of any related criminal charges or requiring immunity for the claimant's disclosures.

*Id.* at 692; *see also United States v. Parcels of Land*, 903 F.2d 36, 44 (1st Cir. 1990) (acknowledging that district court entered a protective order to accommodate claimant's Fifth Amendment interest).

We agree that district courts should grant a defendant's motion to continue forfeiture proceedings until criminal charges are resolved.  In this case, no criminal charges were filed against Herrera.  We conclude the district court erred by failing to rule on the motion to suppress before adjudicating the forfeiture claims.

2. *The Fifth Amendment trumps the threshold pleading requirements in section 809A.13(4)(d).*  We next consider whether Herrera was excused from complying with the threshold pleading requirements of section 809A.13(4)(*d*) because he invoked his Fifth Amendment privilege. We conclude that he was.  Based on the information provided in his answer claiming an interest in the cash, and his assertion of his Fifth Amendment privilege, Herrera has standing to contest the forfeiture.

As noted, the forfeiture statute's disclosure provisions are mandatory.  *See* Iowa Code § 809A.13(4)(*d*) ("The answer . . . *shall* also set forth all of the following: . . . [t]he date, the identity of the transferor, and the circumstances of the claimant's acquisition of the interest in the property." (Emphasis added.)).  The State argues, and the district court ruled, that Herrera's omission of the required information from his

Answer was fatal to his claim. This puts Herrera to a difficult choice between asserting his privilege against self-incrimination or foregoing his claim for return of the contested property.

Some courts reject Fifth Amendment objections to forfeiture statutory disclosure requirements by concluding that claimants fearing self-incrimination can simply refrain from demanding return of the disputed property. *See State v. $8,000.00 U.S. Currency*, 827 So. 2d 634, 639 (La. Ct. App. 2002). There, the Louisiana Court of Appeals rejected a claimant's argument that he should not have to provide certain information required by the forfeiture statute because doing so could be self-incriminating. *Id.* The court observed, "If one does not wish to incriminate himself or subject himself to prosecution for perjury or false swearing, he simply does not file a claim under [the statute], as the filing of such a claim is not required." *Id.* The fact the claimant faces a tough choice "does not violate any constitutional guarantees." *Id.* *But see People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van*, 685 N.E.2d 1370, 1390–91 (Ill. 1997) (Freeman, C.J., dissenting) (acknowledging that claimants "face a Hobson's choice: either surrender the constitutional privilege and subject themselves to possible criminal prosecution, or forgo the opportunity to contest the forfeiture" and concluding that claimants "should be permitted to invoke the fifth amendment right against self-incrimination with respect to" the statutory disclosure requirements).

We have recognized in other contexts that it is not unconstitutionally coercive to force a defendant to make difficult choices. *See, e.g., State v. Speed*, 573 N.W.2d 594, 597 (Iowa 1998) ("The fact that an accused may elect to plead guilty to a lesser offense when he is also charged with a more serious offense does not make his plea coerced."

(quoting *State v. Lindsey,* 171 N.W.2d 859, 865 (Iowa 1969))). Indeed, "[t]he Fifth Amendment . . . allows room for hard choices after a conviction when legitimate penological goals are served." *State v. Washington,* 832 N.W.2d 650, 660 (Iowa 2013). There, we noted that

> [a] defendant facing sentencing may confront such choices when he or she is asked to provide his or her version of the offense for purposes of a [presentence investigation]. Likewise, the defendant may face the same dilemma when offered the right of allocution at the sentencing hearing. If the defendant does not admit to having engaged in criminal conduct, will the defendant appear unremorseful or unlikely to benefit from rehabilitation?

*Id.* In *State v. Iowa District Court,* we rejected a Fifth Amendment claim raised by an inmate who was denied earned-time credit for failing to undergo sex offender treatment that required him to acknowledge responsibility for his offense. 801 N.W.2d 513, 515 (Iowa 2011). We reiterated that "a person's exercise of a constitutional right *may* indeed have consequences" without violating the Fifth Amendment. *Id.* at 528 (quoting *In re C.H.,* 652 N.W.2d 144, 150 (Iowa 2002) (acknowledging that a parent's failure to admit responsibility for sexual abuse may hurt the parent's chance of regaining custody of the child but explaining that this consequence falls outside the protection of the Fifth Amendment)). These cases are distinguishable because the defendant had already pled guilty or been convicted of a crime. By contrast, Herrera was not charged with or convicted of a crime.

In *Wohlstrom,* the Arizona Supreme Court held that striking the petitioner's claim to property violated the Fifth Amendment and the parallel state constitutional provision when the petitioner declined to provide some of the information required by the forfeiture statute. 884 P.2d at 688, 693. The court noted that, "by invoking his right against self-incrimination, petitioner lost the ability to intervene in the

proceedings, virtually assuring a forfeiture." *Id.* at 689. The court concluded "that the trial court impermissibly forced petitioner to choose between 'surrendering his constitutional privilege and forfeiting property.'" *Id.* at 690 (quoting *State v. Ott*, 808 P.2d 305, 312 (Ariz. Ct. App. 1990)). Therefore, the petitioner who asserted a possessory interest in the property had standing to challenge the forfeiture without disclosing information the petitioner considered potentially incriminating. *Id.* at 689 & n.1.; *see also United States v. Real Prop. Known as 212 East 47th Street, Apt. 4E, New York, New York*, No. 16–8375 (MLC)(DEA), 2017 WL 1496931, at *4–7 (D.N.J. Apr. 25, 2017) (concluding that a claimant who filed a verified claim but objected to filing an answer to the forfeiture complaint—as required by the federal rule—on the basis of his Fifth Amendment privilege had statutory standing to assert a claim in the forfeiture proceeding).

The State relies on *United States v. $154,853.00 in U.S. Currency*, in which the United States Court of Appeals for the Eighth Circuit held a forfeiture claimant's refusal to provide the requisite information "on the asserted basis of his Fourth and Fifth Amendment privileges did not preclude the district court from striking his claims." 744 F.3d 559, 564 (8th Cir. 2014). The claimant filed an amended verified claim in which he stated,

> Claimant has an ownership and possessory interest in the seized U.S. Currency. $4,500.00 more or less of the U.S. Currency was found on Claimant's person and earned by Claimant through his employment. The remaining $150,353 more or less of the U.S. Currency was given to Claimant by another person with Claimant as bailee.

*Id.* at 562. The claimant did not identify the bailor but instead "object[ed] to being required to provide any additional information under the Fourth Amendment and Fifth Amendment privileges." *Id.* In

addition, the government submitted special interrogatories, and the claimant responded to each interrogatory by stating,

> I object to answering this interrogatory for the reason that any answer I would give would be evidence derived from prior violations of the Fourth Amendment and Fifth Amendment to the United States Constitution and that I claim the Fourth Amendment and Fifth Amendment exclusionary rules as a privilege against answering at this time.

*Id.* at 561–62.

The district court struck the claimant's amended verified complaint because it did not comply with the rule requiring that "on asserting an interest in currency as a bailee, the claimant must identify the bailor." *Id.* at 562. The court also determined the claimant's answer to the special interrogatories was insufficient. *Id.* The court ordered forfeiture of the currency, and the claimant appealed. *Id.* The Eighth Circuit held that the claimant's assertion of his Fourth and Fifth Amendment privileges did not preclude the district court from striking his claims for failure to establish statutory standing. *Id.* at 564 (citing *United States v. $148,840.00 in U.S. Currency*, 521 F.3d 1268, 1273–74 (10th Cir. 2008) ("A claimant's decision to invoke the Fifth Amendment's protection against self-incrimination . . . does not decrease his burden of establishing standing [under the forfeiture statute.]")).

The Sixth Circuit criticized *$154,853.00 in U.S. Currency* for its dearth of analysis in "affirm[ing] the striking of the claim for failure to comply with [the rule] because it contained 'blanket assertions that did not sufficiently identify [the claimant's] interest' in the funds to be forfeited." *$31,000.00 in U.S. Currency*, 872 F.3d at 353 (alteration in original) (quoting *$154,853.00 in U.S. Currency*, 744 F.3d at 563) (noting

that "[t]he Eighth Circuit does not provide any persuasive analysis . . . to demonstrate why this holding must be true").

We are persuaded by the Arizona Supreme Court's reasoning in *Wohlstrom.* Herrera should be excused from complying with the pleading requirements of section 809A.13(4)(*d*) because he claimed a possessory interest in the property and invoked his Fifth Amendment privilege against self-incrimination. *See Wohlstrom*, 884 P.2d at 689 & n.1 (concluding petitioner who asserted a possessory interest in the property had standing to challenge the forfeiture without disclosing information the petitioner considered potentially incriminating).[3]

We hold the district court erred by rejecting Herrera's claim based on his noncompliance with the statutory disclosure requirements. The district court should have sustained his Fifth Amendment objection to the disclosures specified in Iowa Code section 809A.13(4)(*d*). The district court improperly dismissed Herrera from the forfeiture proceedings. *See Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1088 (5th Cir. 1979) (noting that when one party's "silence is constitutionally guaranteed, dismissal is appropriate only where other, less burdensome, remedies would be an ineffective means of preventing unfairness" to the other party).

**C. Whether Rodriguez Is Entitled to Recover Attorney Fees as a Prevailing Party.** We next address whether Rodriguez was entitled to attorney fees under Iowa Code section 809A.12(7) as a prevailing party. The district court ruled that he was not a prevailing party because the State did not object to the return of the vehicle and there was no

---

[3]The State seized the cash from a vehicle Herrera was driving across the country, and Herrera alone claims the currency at issue in this proceeding. *See Wohlstrom*, 884 P.2d at 691 (recognizing "the state's need to protect against fraudulent claims").

adjudication on the merits. The district court also found Rodriguez incurred no attorney fees because "every cent of attorney's fees requested by [Rodriguez's lawyer] is attributable to his representation of Herrera." The court of appeals affirmed the denial of fees on that ground alone, without reaching the question of whether Rodriguez is a prevailing party. We elect to decide the threshold question first—whether Rodriguez is a prevailing party.

We have not yet addressed whether a party in Rodriguez's position is a prevailing party under Iowa Code section 809A.12(7), which provided,

> In any proceeding under this chapter, if a claim is based on an exemption provided for in this chapter, the burden of proving the existence of the exemption is on the claimant. However, once the claimant comes forward with some evidence supporting the existence of the exemption, the state must provide some evidence to negate the assertion of the exemption. The state's evidence must be substantial, though not necessarily rising to the level of a preponderance of the evidence, and more than a simple assertion of the claimant's interest in the property. The agency or political subdivision bringing the forfeiture action shall pay the reasonable attorney fees and costs, as determined by the court, incurred by a claimant who prevails on a claim for exemption in a proceeding under this chapter.

Iowa Code § 809A.12(7).[4] The legislature presumably enacted the fee-shifting provision in the chapter 809A, the Forfeiture Reform Act, to

---

[4]The legislature amended this provision in 2017, and it now provides,

> In any proceeding under this chapter, if a claim is based on an exemption provided for in this chapter, the claimant must make a prima facie showing of the existence of the exemption. The prosecuting attorney must then prove by clear and convincing evidence that the exemption does not apply. The agency or political subdivision bringing the forfeiture action shall pay the reasonable attorney fees and costs, as determined by the court, incurred by a claimant who prevails on a claim for exemption in a proceeding under this chapter.

2017 Iowa Acts ch. 114, § 5 (codified at Iowa Code § 809A.12(7) (2018)).

expand access to legal counsel in civil forfeiture proceedings. *See City of Riverdale v. Diercks*, 806 N.W.2d 643, 653 (Iowa 2011) ("The reason an Iowa statute entitles successful litigants to attorney fees 'is to ensure that private citizens can afford to pursue the legal actions necessary to advance the public interest vindicated by the policies' of the statute." (quoting *Lynch v. City of Des Moines*, 464 N.W.2d 236, 239 (Iowa 1990))); *see also* Louis S. Rulli, *The Long Term Impact of CAFRA: Expanding Access to Counsel and Encouraging Greater Use of Criminal Forfeiture*, 14 Fed. Sent'g Rep. 87, 90 (2001) (acknowledging that "[w]ith civil forfeiture law so heavily weighted in favor of the government and without an assurance of fees even when the property owner prevailed, private lawyers were understandably reluctant to invest in civil forfeiture cases" and applauding the Federal Civil Asset Forfeiture Reform Act of 2000 (CAFRA) for authorizing an award of attorney fees to a person who "substantially prevails" against the government in a civil forfeiture proceeding because the provision "provides needed incentive for private lawyers to become more involved in civil forfeiture cases").

Civil forfeiture proceedings lack the procedural protections of criminal cases. *See Leonard,* ___ U.S. ___, 137 S. Ct. at 847–48 (Thomas, J., statement respecting denial of certiorari). Allowing fee awards under chapter 809A when the owner prevails after contested proceedings furthers the legislative purpose to incentivize attorneys to represent citizens seeking return of their property from the government. This will help level the playing field for persons contesting government seizures of private property.

The "innocent owner" exemption upon which Rodriguez relies is codified in section 809A.5(1)(*a*), which exempts property from forfeiture if

> [t]he owner or interest holder acquired the property before or during the conduct giving rise to its forfeiture, and did not know and could not reasonably have known of the conduct or that the conduct was likely to occur, or acted reasonably to prevent the conduct giving rise to forfeiture.

Iowa Code § 809A.5(1)(*a*). Rodriguez's attorney made clear from the beginning of the proceedings that Rodriguez relied on the "innocent owner" exemption in section 809A.5(1)(*a*) and would pursue attorney fees if he prevailed.

The timeline of this case shows how legal counsel was needed to level the playing field. The State impounded the Expedition owned by Rodriguez on September 12, 2015. Rodriguez, a New York resident, hired Iowa counsel who asserted the innocent-owner defense six days later. On October 1, the State filed the in rem civil forfeiture complaint against the vehicle, cash, and other property. Herrera and Rodriguez filed a joint answer to that complaint on November 5. On December 10, Rodriguez filed a separate claim for return of the Expedition. The same day, during the hearing on Herrera's motion to suppress, the State contended the joint answer filed by Rodriguez was insufficient. On February 9, 2016, the district court set a separate hearing on Rodriguez's claim for February 25. Rodriguez filed his own motion to suppress a week before that hearing. The State did not desist its opposition until several days before the hearing, which the court canceled on February 23. Through the efforts of his lawyer, Rodriguez recovered his vehicle over five months after asserting his "innocent owner" defense. On these facts, we conclude that Rodriguez is a prevailing party under section 809A.12(7). He obtained this relief (the return of his vehicle) without a favorable court adjudication only after five months of contested litigation.

This is not a case in which the State backed down from forfeiting the property shortly after the claimant asserted an innocent-owner exemption. Instead, the State persisted in an attempt to forfeit not just the cash, but the vehicle as well.

The State's acquiescence to the vehicle's return after months of contested litigation is tantamount to a voluntary dismissal that in other contexts has been held sufficient to support a fee award. For example, in *In re Marriage of Roerig*, the court of appeals considered "whether upon plaintiff's voluntary dismissal of her action, defendant became the prevailing party for purposes of an award of reasonable attorney fees under" Iowa's dissolution-of-marriage statute. 503 N.W.2d 620, 622 (Iowa Ct. App. 1993). The court of appeals noted it was "well-established that statutory . . . provisions providing for an award of attorney's fees to the prevailing party in litigation encompass defendants in suits which have been voluntarily dismissed." *Id.* (quoting *Hatch v. Dance*, 464 So. 2d 713, 714 (Fla. Dist. Ct. App. 1985) (per curiam)). The court therefore determined that the defendant was the prevailing party, "[e]ven though there was no final determination on the merits." *Id.*

In *Dutcher v. Randall Foods*, we accepted the United States Supreme Court's definition of "prevailing party" when determining whether a plaintiff was entitled to attorney fees under the Federal Fair Labor Standards Act. 546 N.W.2d 889, 895 (Iowa 1996). Under that definition, "[a] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* (quoting *Farrar v. Hobby*, 506 U.S. 103, 111–12, 113 S. Ct. 566, 573 (1992)). We concluded that the plaintiff "clearly obtained actual

relief on the merits of her claim: she proved that [the defendant] engaged in wage discrimination on the basis of gender." *Id.*

Federal courts are divided on whether a party can be a prevailing party when the opposing party voluntarily dismisses the case. *Compare Automation Support, Inc. v. Humble Design, L.L.C.*, No. 17–10433, 2018 WL 2139042, at *3–5 (5th Cir. May 9, 2018) (per curiam) (concluding defendant was a prevailing party under the Texas Theft Liability Act when the parties "agreed to a voluntary dismissal of the case with prejudice"), *and United States v. 163.25 Acres of Land, More or Less, Situated in Graves Cty., Ky.*, 663 F. Supp. 1119, 1120 (W.D. Ky. 1987) (defining "prevailing party" as "one who has received substantially the relief requested or has been successful on the central issue" and concluding claimants were prevailing parties when the action was voluntarily dismissed and they received the relief they requested (quoting *United States v. Certain Real Prop. Located at 4880 S.E. Dixie Highway*, 628 F. Supp. 1467, 1469 (S.D. Fla. 1986), *vacated on other grounds*, 838 F.2d 1558, 1566 (11th Cir. 1988))), *with Cadkin v. Loose*, 569 F.3d 1142, 1148–49 (9th Cir. 2009) (concluding that the test for determining a prevailing party under the Copyright Act is whether "some court action has created a 'material alteration of the legal relationship of the parties'" (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604, 121 S. Ct. 1835, 1840 (2001))), *and United States v. Thirty-Two Thousand Eight Hundred Twenty Dollars & Fifty-Six Cents ($32,820.56) in U.S. Currency*, 106 F. Supp. 3d 990, 995 (N.D. Iowa 2015) (concluding claimants did not "substantially prevail" and were therefore not entitled to attorney fees under CAFRA because "[t]he dismissal without prejudice lacks the required judicial

imprimatur to qualify as a material alteration of the parties' legal relationship"), *aff'd*, 838 F.3d 930 (8th Cir. 2016).

The United States Supreme Court recently held "that a defendant need not obtain a favorable judgment *on the merits* in order to be a 'prevailing party'" under Title VII. *CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. ___, ___, 136 S. Ct. 1642, 1651 (2016) (emphasis added). The Supreme Court vacated the judgment of the court of appeals, which held that the defendant did not prevail on claims that were dismissed by the district court because the commission failed to investigate or conciliate the claims as required by Title VII. *Id.* The Supreme Court explained,

> Common sense undermines the notion that a defendant cannot "prevail" unless the relevant disposition is on the merits. Plaintiffs and defendants come to court with different objectives. A plaintiff seeks a material alteration in the legal relationship between the parties. A defendant seeks to prevent this alteration to the extent it is in the plaintiff's favor. The defendant, of course, might prefer a judgment vindicating its position regarding the substantive merits of the plaintiff's allegations. The defendant has, however, fulfilled its primary objective whenever the plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's decision. The defendant may prevail even if the court's final judgment rejects the plaintiff's claim for a nonmerits reason.

*Id.* *CRST* did not deal with a voluntary dismissal. But we find its reasoning applies here. Rodriguez sought to prevent the State from taking permanent possession of his vehicle. He fulfilled his primary objective of getting his vehicle back after months of contested litigation against the State. On this record, we hold that Rodriguez is a prevailing party even though the district court did not expressly find that he was an "innocent owner." The district court erred by ruling that Rodriguez was not a prevailing party.

The court of appeals and district court also concluded that Rodriguez failed to meet his burden of proving what amount of fees were attributable to counsel's representation of Rodriguez rather than Herrera. "An applicant for attorney fees has the burden to prove that the services were reasonably necessary and that the charges were reasonable in amount." *Schaffer v. Frank Moyer Constr., Inc.*, 628 N.W.2d 11, 23 (Iowa 2001). In view of our holding that Rodriguez is a prevailing party, we conclude the remedy for the shortcomings in documenting his fee request is not to deny him *any* fee award, but rather to remand the case to allow him the opportunity to show the amount of reasonable attorney fees he incurred recovering his Expedition apart from those the same lawyer incurred representing Herrera. Several of the attorney's actions were clearly done solely for Rodriguez, such as filing his request for return of the vehicle, filing a separate motion to suppress, and communicating with counsel for the State over the Expedition's return. The district court abused its discretion by denying Rodriguez *any* fee award.

We remand this case to the district court to determine the reasonable attorney fees related to the representation of Rodriguez alone. *See In re Estate of Bockwoldt*, 814 N.W.2d 215, 232–33 (Iowa 2012) (allowing resubmission of more detailed fee application on remand). On remand, the court may also award appellate attorney fees. *See Schaffer*, 628 N.W.2d at 23 (concluding district court had authority to award appellate attorney fees pursuant to statute providing attorney fees for a prevailing plaintiff when the statute "in no way limit[ed] attorney fees to those incurred in the district court"); *Bankers Trust Co. v. Woltz*, 326 N.W.2d 274, 278 (Iowa 1982) (awarding appellate attorney fees pursuant to statutory provision allowing attorney fees under contract that did not

limit fees to those incurred at trial); *see also Baumhoefener Nursery, Inc. v. A & D P'ship, II*, 618 N.W.2d 363, 369 (Iowa 2000) (permitting award of appellate attorney fees under mechanic's lien statute because the mechanic's lienholder prevailed on appeal). The award of fees may include time preparing his separate fee claim and litigating his entitlement to fees. *See Lynch*, 464 N.W.2d at 240–41.

**IV. Disposition.**

For those reasons, we vacate the decision of the court of appeals and reverse the district court judgment forfeiting the personal property claimed by Herrera and denying any fee award to Rodriguez. We remand the case for the district court to rule on the motion to suppress under the existing record and, then, resume the forfeiture proceedings as to Herrera consistent with this opinion. On remand, Rodriguez may submit a new application for his own attorney fees, and the district court shall then determine the amount of reasonable attorney fees (including appellate fees) Rodriguez incurred recovering his vehicle.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED; CASE REMANDED WITH INSTRUCTIONS.**

All justices concur except Hecht, J., who takes no part.